**Anna HALECKI, Administratrix ad Prosequendum of the Estate of Walter Joseph Halecki, deceased, and Anna Halecki, Administratrix of the Estate of Walter Joseph Halecki, deceased, Plaintiff-Appellee,**

v.

**UNITED NEW YORK AND NEW JERSEY SANDY HOOK PILOTS ASSOCIATION, a corporation, and United New York Sandy Hook Pilots Association, a corporation, Defendants-Appellants.**

**No. 277, Docket 27216.**

United States Court of Appeals Second Circuit.

Argued March 29, 1962.

Decided May 1, 1962.

Bernard Chazen, Hoboken, N. J. (Milton Garber and Nathan Baker, Hoboken, N. J., on the brief), for plaintiff-appellee.

Lawrence J. Mahoney, New York City (Dougherty, Ryan, Mahoney & Pellegrino, New York City, on the brief), for defendants-appellants.

Before MEDINA, SMITH and HAYS, Circuit Judges.

MEDINA, Circuit Judge.

Walter Joseph Halecki died of carbon tetrachloride poisoning contracted in the course of cleaning the generators in the engine room of the pilot boat owned by defendants-appellants. After a third trial of the case, the jury rendered a verdict of $70,000 and the shipowners again appeal. The first trial resulted in a judgment based upon both negligence and unseaworthiness. This Court affirmed (2 Cir., 251 F.2d 708), Chief Judge Lumbard dissenting, and the Supreme Court reversed and remanded for trial on the negligence count alone. United New York & New Jersey Sandy Hook Pilots Ass'n v. Halecki, 1959, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541. The second trial resulted in a verdict for defendants, and the judgment entered on this verdict was reversed by this Court and the case again remanded for a new trial (2 Cir., 282 F.2d 137), on the ground that the

trial judge in his charge had erroneously left the jury with the impression that "liability was dependent almost entirely on control" of the operation of cleaning the generators. To avoid repetition we shall assume familiarity with the facts as outlined in the prior opinions above cited.

The shipowners contend that we must again reverse because Judge McGohey is said to have departed from the controlling principles stated by the Supreme Court, and by this Court on the last appeal, and in his instructions to the jury enlarged the scope of the duty owed by the shipowners to Halecki to the prejudice of the shipowners. The gist of appellants' argument is contained in the following exception to the charge:

"Defendant further excepts to your Honor's instruction that defendant had a duty to ascertain if Rodermond and K & S were competent and also that defendant had a duty to see that the manner and method was proper."

The evidence had disclosed that the vessel was at Rodermond's shipyard, that the shipowners had ordered Rodermond to have the generators cleaned, specifically requiring the use of carbon tetrachloride, a substance known to be dangerous to human safety, for the purpose, and Rodermond had turned the work over to K & S, Halecki's employer.

The portion of Judge McGohey's instructions to which the above-quoted exception was noted, was as follows:

"The defendant didn't know how to do this work. They brought it to a shipyard. Rodermond didn't feel competent to do it so they engaged K & S, Halecki's employer. The defendant was the one that ordered this work to be done by means of the carbon tetrachloride and I charge you as a matter of law that the defendant thereafter had a duty to ascertain whether the subcontractor or Rodermond was competent to do this work and they were further charged with a duty to ascertain and

take reasonable steps to be sure in so far as they could that the manner and method employed by either Rodermond or K & S was reasonably proper to keep the place in which this man had to work reasonably safe under all the circumstances."

The main thrust of the instructions, and the context in which this portion thereof must be read, is that Halecki was a business invitee, that the shipowners owed him a duty to exercise reasonable care to furnish him with a reasonably safe place in which to work, and that the basic question was whether under all the circumstances of the case the shipowners took reasonable steps to provide a reasonably safe place in which to work.

The directions given by the Supreme Court in this case are simple and clear. "The defendants owed a duty of exercising reasonable care for the safety of the decedent." 358 U.S. at pp. 618–619, 79 S.Ct. at p. 520. And, at p. 619, 79 S.Ct. at p. 520: "It was for the triers of fact to determine whether the defendants were responsibly negligent in permitting or authorizing the method or manner of its [carbon tetrachloride] use."

There is no requirement in justice or common sense that the trial judge restrict his elucidation of the issues to the bare formula of the exercise of reasonable care. Carbon tetrachloride was known to be dangerous to human life when used to spray generators. The minimum precautions the shipowners could have taken were to make some inquiry with respect to the competency of the contractor engaged to do the work, unless they already possessed reliable information on the subject, or make some inquiry with respect to the proposed method and manner of doing the work. Had the shipowners made some proper inquiry as to the competence of either Rodermond or K & S and received a reasonably satisfactory reply; or had similar proper inquiry been made and a similar response received, with respect to the proposed method and manner of doing the work, it would have been for the jury to say whether the shipowner had, under

the circumstances, exercised reasonable care to provide Halecki with a reasonably safe place in which to work. What made the instructions so damaging to the shipowners, and properly so, was the fact that the evidence disclosed no efforts whatever on the part of the shipowners to ascertain whether either Rodermond or K & S were competent to do this work or to inform themselves with repesct to the method and manner proposed to be followed in doing the work. For the same reason it made no difference that Judge McGohey charged the shipowners with the duty to make both such inquiries. Against such a background of fact we cannot find any error in the instructions as given.

The vessel on which Halecki was working when he sustained his injuries was at the time in the territorial waters of the State of New Jersey; the action of which the District Court had jurisdiction because of diversity was based upon the New Jersey Wrongful Death Act, N.J. Stat.Ann. 2A:31–1; and the case is governed by New Jersey law. That New Jersey has to some extent adopted maritime law has already been established. See the opinion of the Supreme Court in this case, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541, and The Tungus v. Skovgaard, 1959, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524. Moreover, the soundness of the instructions given by Judge McGohey is further attested by rulings on the same subject by American courts generally. See, e. g., West v. United States, 1959, 361 U.S. 118, 124, 80 S.Ct. 189, 4 L.Ed.2d 161; Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 1958, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491; Anderson v. Lorentzen, 2 Cir., 1947, 160 F.2d 173; Vanderlinden v. Lorentzen, 2 Cir., 1944, 139 F.2d 995. In any event, Judge McGohey has done no more than apply the teaching of the Supreme Court in this very case.

Nor do we find anything to the contrary in the exposition of the measure of the shipowners' duty to Halecki in the opinion of the Court, written by our brother Moore, on the prior appeal. His comment that "the jury might find that the owner had done everything possible to assure safety," was upon the implied supposition that there was proof of "assurance by the subcontractor that its own additional portable ventilators and gas masks were sufficient to prevent injury." Even upon this hypothesis, the opinion continues and states that the jury might "equally conclude that the owner should have checked the equipment brought on board at least as to capacity and location for ventilating purposes," and thus have concluded as matter of fact that the shipowners had not exercised reasonable care to provide a reasonably safe place to work. In other words, just as charged by Judge McGohey, the question of reasonable care was one for the jury. Accordingly, we hold that the instructions as given were precisely those required by the Supreme Court and our Court in this case, and by the law generally applicable to a situation where a shipowner turns over to a subcontractor the performance of an operation inherently dangerous to human safety.

■ Finally, the shipowners contend that there is no obligation on their part to provide a reasonably safe place to work "where the work itself creates a danger." It is, we think, a sufficient answer to say that the rule is to the contrary in that class of cases, such as the one now before us, where the shipowner requires the work to be done in a manner inherently dangerous to human safety. In such cases the shipowner is required by law to take reasonable precaution to prevent injury to the employees of subcontractors engaged to do the work.

Affirmed.