UNITED NEW YORK SANDY HOOK
PILOTS ASSOCIATION, a Corporation
of the State of New York, and Fulton
P & I Underwriting Agency, Inc., Ap-
pellants,

v.

RODERMOND INDUSTRIES, INC., a
Corporation of the State of New Jersey,
and K. & S. Electric, Inc., a Corporation
of the State of New Jersey.

No. 16617.

United States Court of Appeals
Third Circuit.

Argued Nov. 8, 1967.

Decided March 22, 1968.

Lawrence J. Mahoney, Dougherty, Ryan, Mahoney & Pellegrino, New York City (Thomas G. Aljian, Jersey City, N. J., on the brief), for appellants.

Theodore W. Geiser, Pindar, McElroy, Connelly & Foley, Newark, N. J., for appellee, Rodermond Industries, Inc. (Milton, Keane & DeBona, Jersey City, N. J., on the brief).

Jerome B. Litvak, Braff, Litvak & Ertag, East Orange, N. J., for appellee, K. & S. Electric Inc.

Before STALEY, Chief Judge, and KALODNER and FORMAN, Circuit Judges.

## OPINION OF THE COURT

STALEY, Circuit Judge.

This is an appeal by United New York Sandy Hook Pilots Association (hereinafter "Pilots Assn") and its insurer, Fulton P & I Underwriting Agency, Inc., plaintiffs in the district court, from a judgment of dismissal, rendered at the close of their case, directing verdicts against the plaintiffs and in favor of each of the defendants, Rodermond Industries, Inc (hereinafter "Rodermond") and K. & S. Electric, Inc. (hereinafter "K. & S."). Appellants request reversal of the district court's denial of their motion for a directed verdict and of an order granting the appellees' motions to dismiss. We are asked to enter judgment in favor of appellants, or alternatively, to grant a new trial.

The Pilots Assn in September of 1951, brought its pilot boat "New Jersey" to Rodermond's repair yard in Jersey City, New Jersey. Rodermond had contracted with the Pilots Assn to perform certain overhaul and repair work aboard this vessel. Included in the repair specifications were electrical repairs. Rodermond, however, had no facilities for performing electrical work and it subcontracted the electrical repairs to K. & S.

Part of this subcontract called for K. & S. to clean the boat's generators by use of carbon tetrachloride. The latter is a volatile liquid which, when sprayed, will effectively remove grease and dirt, but whose fumes, unless their density is carefully controlled, may be deadly. In 1951, it was customary to use carbon tetrachoride for cleaning generators, and the Pilots Assn specified that this substance be used. Because of the danger involved, Rodermond made arrangements for K. & S. to clean the generators on Saturday, September 29, 1951, when no other workers would be on the vessel.

The equipment used by K. & S. to clean the generators and to ventilate the engine room was brought aboard and assembled on Friday, September 28, 1951, by Donald Doidge and Walter Halecki, employees of K. & S., under the supervision of George Kuntz, president of K. & S. These three electricians were familiar with the use of carbon tetrachloride; they had used it many times in the past. Blowers owned by Rodermond were set up by the K. & S. employees. K. & S. supplied the gas masks and the carbon tetrachloride, while air hoses and electric power were supplied by Rodermond, as the vessel itself had no power. No one but K. & S. employees took part in setting up the equipment.

Aside from the specified use of carbon tetrachloride, the method and manner in which the generators were to be cleaned was within the discretion of Doidge; only he and Halecki engaged in the cleaning operation on September 29, 1951. The

only other person continuously aboard the vessel while the two electricians were working was the Pilots Assn's watchman, who did not enter the engine room. During the time that the generators were being cleaned, the vessel was moored, in navigable waters, at Rodermond's pier.

Following the completion of this work, Walter Halecki became ill, and he died shortly thereafter on October 12, 1951, of carbon tetrachloride poisoning. The decedent's administratrix brought suit against the Pilots Assn in the United States District Court for the Southern District of New York to recover damages for Halecki's death. That action, based upon the New Jersey wrongful death act, N.J.Stat.Ann. 2A:31–1, was brought in the federal court by reason of diversity of citizenship. At the first New York trial in December, 1956, the administratrix alleged that Halecki's death was caused by the negligence of the Pilots Assn and the unseaworthiness of the New Jersey. Over the objections of the Pilots Assn, the case was submitted to the jury on the basis of both unseaworthiness and negligence, and a verdict was returned in favor of the administratrix. The Court of Appeals for the Second Circuit affirmed, Judge Lumbard dissenting. Halecki v. United New York & N. J. Sandy Hook Pilots Ass'n, 251 F.2d 708 (C.A.2, 1958)[1] The Supreme Court granted certiorari, and in a five to four opinion the Court held that the decedent was not entitled to the warranty of seaworthiness. United New York & N. J. Sandy Hook Pilots Ass'n v. Halecki, 358 U.S. 613, 79 S.Ct. 517, 3 L.Ed.2d 541 (1959). The judgment in favor of the decedent's estate was vacated and the cause remanded to the district court with instructions that a new trial be held on the sole question of negligence.

The case was retried in October, 1959, and the jury rendered a verdict in favor of the then defendant Pilots Assn. For reasons not relevant here, the Second Circuit reversed and remanded for a new trial. Halecki v. United New York and N.J. Sandy Hook Pilots Ass'n, 282 F.2d 137 (C.A.2, 1960). At the third trial in June of 1961, the jury was instructed that the Pilots Assn was liable if it did not take reasonable steps to be sure, insofar as it could, that the manner and method employed by either Rodermond or K. & S. was reasonably proper to keep the place in which Halecki had to work reasonably safe under all the circumstances. A verdict was returned and judgment entered in favor of the administratrix; the Court of Appeals for the Second Circuit affirmed, 302 F.2d 840 (C.A.2, 1962), and the Supreme Court denied certiorari. 371 U.S. 825, 83 S. Ct. 46, 9 L.Ed.2d 64 (1962).

The case now before this court concerns the New Jersey indemnity action brought by the Pilots Assn, and its insurer, against Rodermond and K. & S.[2] Appellants contend in this diversity suit that the appellees, in undertaking to perform the work aboard the New Jersey, impliedly warranted to perform the work in a safe and proper manner, to keep the shipowner free from harm, and to indemnify it for any damage caused by the contractors' negligence. The district court, in its oral opinion dismissing this action, first determined that the Supreme Court's decision in United New York & N.J. Sandy Hook Pilots Ass'n v. Halecki, supra, required the application of New Jersey law rather than federal maritime principles. Notice was then taken of the fact that a New York jury had found the Pilots Assn guilty of negligence in not providing Halecki with a safe place to work. The court concluded that the shipowner could not recover indemnity against either Rodermond or K. & S. because the plaintiff was a joint tortfeasor, and under New Jersey law an indemnitee may not recover indemnity where the creation of the liability results exclusively or concurrently from the wrongdoing of

---

1. No explanation has been offered as to why the Pilots Assn has dropped "N.J." from its name in this suit, but used it throughout the New York litigation.

2. Indemnity was sought in the total amount of $143,579.28.

the indemnitee. The court also held that the Pilots Assn could not prevail against K. & S. for the additional reason that K. & S. had paid workmen's compensation to Halecki's widow. Under New Jersey law, the court noted, the existence of the workmen's compensation restriction respecting remedies between the employer and employee operates reciprocally for the benefit of both, entitling the employer to the exclusivity provisions of the Act as opposed to the claim of a joint tortfeasor. See Workmen's Compensation Act, N.J. Stat.Ann. 34:15–8; Public Service Electric & Gas Co. v. Waldroup, 38 N.J.Super. 419, 119 A.2d 172 (1955).

I

■ The threshold question on this appeal is whether the district court erred in applying New Jersey law to the instant controversy rather than maritime principles. The answer depends, in part, upon the breadth of the Supreme Court's decisions in Halecki, supra, and The Tungus v. Skovgaard, 358 U.S. 588, 79 S. Ct. 503, 3 L.Ed.2d 524 (1959), a case decided the same day as Halecki. Both these cases involved suits brought by the decedent's administratrix under the New Jersey wrongful death act. The state statute was invoked because maritime law itself confers no right of action for wrongful death in state territorial waters. Hess v. United States, 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed.2d 305 (1960); The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886);[3] instead, admiralty courts entertain such an action by permitting the wrongful death statute of the state in which the death occurred to supplement the general maritime law. Western Fuel Co. v. Garcia, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210 (1921). In these situations, maritime law adopts the state statute, and enforces it "as it would one originating in any foreign jurisdiction." Levinson v. Deupree, 345 U.S. 648, 652,

73 S.Ct. 914, 916, 97 L.Ed. 1319 (1953); Western Fuel Co. v. Garcia, 257 U.S. supra, at 242, 42 S.Ct. 89.

Mindful of the role played by state law in this area, the Supreme Court in Halecki held that the Court of Appeals for the Second Circuit correctly viewed "its basic task as one of interpreting the law of New Jersey." 358 U.S. at 615, 79 S. Ct. at 518. Thus the Court sanctioned the view "that in an action for wrongful death in state territorial waters the conduct said to give rise to liability is to be measured not under admiralty's standards of duty, but under the substantive standards of the state law." Hess v. United States, supra, 361 U.S. at 319, 80 S.Ct. at 345. The Court in Halecki based its holding on "the reasons stated in The Tungus v. Skovgaard." In the latter case, the Court reiterated its long established rule "that when admiralty adopts a State's right of action for wrongful death, it must enforce the right as an integrated whole, with whatever conditions and limitations the creating State has attached." 358 U.S. at 592, 79 S.Ct. at 506.

■ As noted, the district court concluded that the Halecki decision required a ruling that New Jersey law controlled this indemnity action. We, however, do not read Halecki as impelling the conclusion that because the initial suit was brought pursuant to a state wrongful death act, the shipowner is precluded from pressing its maritime claim for indemnity against the contractors. We think such a ruling would directly conflict with Supreme Court decisions holding that state law cannot deprive a litigant of admiralty rights arising out of an accident upon navigable waters. Pope & Talbot v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953); Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed 239 (1942); Great Lakes

---

3. Congress has enacted legislation, specifically the Death on the High Seas Act, 41 Stat. 537 et seq., 46 U.S.C. § 761 et seq., and the Jones Act, 41 Stat. 1007, 46 U.SC. § 688, providing for wrongful death actions in certain situations. However, neither Act applied to Halecki's case. Nor did his suit concern those rights conferred under the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424 et seq., 33 U.S.C. § 901 et seq.

Dredge & Dock Co. v. Kierejewski, 261 U.S. 479, 43 S.Ct. 418, 67 L.Ed. 756 (1923). The Supreme Court spoke decisively on this subject in Pope & Talbot v. Hawn, supra, when it said:

"While states may sometimes supplement federal maritime policies, a state may not deprive a person of any substantial admiralty rights as defined in controlling acts of Congress or by interpretive decisions of this Court. These principles have been frequently declared and we adhere to them." 346 U.S. at 409–410, 74 S.Ct. at 205.

■ There can be no doubt that federal maritime law affords a shipowner the right of indemnity against stevedores and other contractors for foreseeable damages resulting from breach of the implied warranty of workmanlike performance.[4] Many courts, including our own, have considered the implied warranties given by the various contractors, and it is now taken for granted that these implied contracts are maritime in nature.[5] The Court of Appeals for the Second Circuit summarized the state of the law on this subject in A/S J. Ludwig Mowinckels Rederi v. Commercial Stevedoring Co., 256 F.2d 227 (C.A.2), cert. dismissed, 358

U.S. 801, 79 S.Ct. 9, 3 L.Ed.2d 49 (1958). There the court observed:

" * * * [I]n the field of maritime contracts generally, the cases are clear that in most situations federal, and not state, principles apply to determine the respective rights and duties of the parties. In fact the Supreme Court only recently discussed the implied promise of a stevedore to indemnify a shipowner * * *, Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133; * * Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491, * * * and made no mention of state rules which either create or condition its liability. Obviously, therefore, the Court considered that these problems are governed solely by Federal Maritime principles. * * * " 256 F.2d at 230.

■ Obvious, too, is the fact that admiralty law needs no supplementation when it comes to the shipowner's right of indemnity, and if we are to allow state law to govern this appeal we would be ignoring both the general constitutional doctrine of federal supremacy in maritime affairs, Art. III, § 2, United States Constitution; Pope & Talbot, Inc. v.

---

4. The landmark decision in this area is Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L. Ed. 133 (1956), where it was established that a stevedoring contractor who enters into a service agreement with a shipowner is liable to indemnify the owner for damages sustained as a result of the stevedore's improper stowage of cargo. The Court found that the essence of the stevedore's contract is to perform properly and safely. " * * * This undertaking is the stevedore's 'warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product,' 350 U.S. at 133–134, 76 S.Ct. at 237, a warranty generally deemed to cover defects not attributable to a manufacturer's negligence. * * * " Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, at 318–319, 84 S. Ct. 748, at 751, 11 L.Ed.2d 732 (1964).

In decisions following Ryan, the Court held that the stevedore's obligation to

perform with reasonable safety extended to equipment incidental to the stowage and handling of cargo, Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958), as well as to defective equipment supplied by the shipowner, Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959). And in Italia Societa, supra, the court declared that a shipowner could recover over from a stevedore for breach of warranty even though the injury-causing defect was latent and the stevedore without fault.

For cases involving non-stevedore contractors, see text, p. 71.

5. See Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964); Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958); Hagans v. Ellerman & Bucknall S.S. Co., 318 F.2d 563 (C.A. 3, 1963); Booth S.S. Co. v. Meier & Oelhaf Co., 262 F.2d 310 (C.A.2, 1958).

Hawn, supra; Southern Pacific Co. v. Jensen, 244 U.S. 205, 37 S.Ct. 524, 61 L. Ed. 1086 (1917), and the need for uniformity in the administration of admiralty law. Panama R.R. v. Johnson, 264 U. S. 375, 44 S.Ct. 391, 68 L.Ed. 748 (1924); The J. E. Rumbell, 148 U.S. 1, 13 S.Ct. 498, 37 L.Ed. 345 (1893).

## II

As previously mentioned, the district court dismissed the shipowner's action upon the argument that the Pilots Assn was itself negligent, and was therefore not entitled to indemnity. Reliance was placed on the concepts of primary and secondary and active and passive negligence, with the court apparently concluding that the shipowner could not recover because it was both primarily and actively negligent. We think this was error.

■ The Supreme Court, in Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L. Ed. 133 (1956), held that concepts of comparative negligence were not significant in determining the contractual relationship of the parties.[6] The shipowner's claim is not one for contribution from a joint tortfeasor; it is a claim for indemnity rooted in contract. Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., supra; Weyerhaeuser S.S. Co. v. Nacirema Operating Co., supra. It is sustained by the rule that a contractor warrants by implication to the shipowner that it will perform its services in a workmanlike manner, with reasonable safety to persons and property. Failure to so perform obliges the contractor to indemnify a shipowner that has suffered foreseeable damages due to the warranty's breach. See Weyerhaeuser S.S. Co. v. Nacirema Operating Co., supra; Dziedzina v. Dolphin Tanker Corp., 361 F.2d 120 (C.A.3, 1966); Thompson v. Trent Maritime Co., 353 F.2d 632 (C.A. 3, 1965).

6. This holding was reaffirmed in Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed. 2d 491 (1958), and in Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964).

## III

■ K. & S. contends that it is not bound by the warranty of workmanlike performance because the principles of Ryan, supra, do not apply to contractors other than stevedores. This question has been raised and considered by other courts, and the doctrine has frequently been extended to non-stevedore maritime contractors. See Lusich v. Bloomfield S.S. Co., 355 F.2d 770 (C.A.5, 1966); American Export Lines v. Norfolk Shipbuilding & Drydock Corp., 336 F.2d 525 (C.A.4, 1964); Booth S.S. Co. v. Meier & Oelhaf Co., 262 F.2d 310 (C.A.2, 1958); Smith v. Brown & Root Marine Operators, 243 F.Supp. 130 (W.D.La., 1965), aff'd, 376 F.2d 852 (C.A.5, 1967). In Lusich, supra, a case involving a ship repair contractor, the Court of Appeals for the Fifth Circuit noted:

" * * * [M]any questions as to the scope and application of the Ryan rule were left in doubt. Later decisions deciding many of those questions have liberally construed the rule in favor of the shipowner. * * * [I]t is now accepted that * * * [t]he rule applies to contracts for ship services other than stevedoring, including agreements to make ship repairs. * * * " 355 F.2d at 776.

■ Of course the lack of privity of contract between the Pilots Assn and K. & S. does not obviate the electrical contractor's obligation to indemnify the shipowner if it suffered damages by virtue of the contractor's breach of warranty. This was made clear by the Supreme Court in Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959); and Waterman S.S. Corp. v. Dugan & McNamara, Inc., 364 U. S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960). Nor is K. & S. insulated from suit by the fact that it paid state workmen's compensation payments to the decedent's widow and family. This issue was set-

tled by our court in Hagans v. Ellerman & Bucknall S.S. Co., 318 F.2d 563 (C.A.3, 1963), where we held, relying upon Ryan, that if there is a basis for the shipowner's indemnity suit against the contractor, the contractor's liability is not limited to the state compensation payments paid to its employee. We pointed out in Hagans that the shipowner's claim against the contractor is not for contribution based upon tort, or upon any duty which the employer owes the employee; it is based upon a contractual relationship whereby the employer gives the shipowner a warranty that it will do the work in a reasonably safe manner.

With regard to the Pilots Assn's claim against K. & S., we are of the view that it is a question of fact whether K. & S. breached its warranty. See Lusich v. Bloomfield S.S. Co., supra; Rederi A/B Dalen v. Maher, 303 F.2d 565 (C.A.4, 1962). As stated in Rederi, supra,

> " * * * If a shipowner can show that the stevedore's breach of warranty has occasioned it expense, reimbursement is due. Of course, the shipowner must prove that the stevedore, in fact, breached its warranty and caused injury for which the shipowner was potentially liable and that the expenses incurred in defense are reasonable. * * * " 303 F.2d at 567.

The Pilots Assn urges that the facts necessary to prove that K. & S. breached its warranty were found by the jury in the third New York trial, and that these facts are now binding on both K. & S. and Rodermond, since they were given written notice to come in and defend their interests, but declined to do so. Rodermond and K. & S. answer that the vouching-in notices sent them were not timely since the first trial between Halecki's estate and the Pilots Assn was completed before they were requested to participate in the New York proceedings.[7] The Pilots Assn does not deny this, but claims that the

appellees' argument is invalid because the first trial was nullified by the Supreme Court, and a new trial was ordered on the issue of negligence. The shipowner contends that the only trial of importance here is the third and final New York trial held in June of 1961. It points out that the final judgment rendered at the last trial is the basis for the present indemnity action, and that the appellees were requested to defend the final New York trial approximately four months in advance.

At a pretrial hearing in the New Jersey district court, the Pilots Assn made an offer of proof of a certified copy the record of the third New York trial. Rodermond and K. & S. urged the district judge not to accept the results of this trial as binding upon them. They contended that all the discovery had been completed prior to the first trial, and that over the years, some witnesses died and others became stale. They further contended that if they had been asked to defend at the first trial they "might have acted," presumably to protect their own interests. Briefs on this point were submitted to the district judge, and he subsequently ruled, upon the authority of United States Wire & Cable Corp. v. Ascher Corp., 34 N.J. 121, 167 A.2d 633 (1961), that the appellees were not timely vouched in.

Of course this issue is not governed by state law, but we think, as did the district court, that the criteria for determining validity of a vouching-in notice by an indemnitee to an indemnitor was correctly set out by the New Jersey Supreme Court in United States Wire & Cable Co. v. Ascher Corp., supra. There the court said:

> " * * * [T]he better rule * * * is that such notice, whether written or oral, must contain full and fair information concerning the pending action

---

7. At the New Jersey trial, counsel for the Pilots Assn stated that the appellees were not brought into the first New York trial because the provision of the Federal

Rules extending service beyond the confines of the Southern District of New York did not become effective until after the New York litigation.

and an unequivocal, certain and explicit demand to undertake the defense thereof, with an offer to surrender control of the action to the indemnitor at least to that portion of the claim for which the indemnitee seeks ultimately to hold the indemnitor liable. *The notice should be given so shortly after the institution of suit as to permit a complete control of pretrial proceeding by the indemnitor.* * * * " (Emphasis added.) 167 A.2d at 636–637.[8]

The fact cannot be ignored that Halecki's estate instituted suit against the shipowner on September 17, 1953, yet the appellees were not asked to defend this action until April 3, 1959, almost six years later. Certainly, it cannot be seriously contended that this notice was given so shortly after the institution of suit that Rodermond and K. & S. could have had complete control of all relevant pretrial proceedings. Indeed, more than five years and one trial had transpired before there was even an attempt to bring the appellees into the picture. Basic fairness and common sense compel the conclusion that this notice was untimely. Furthermore, we think that a contrary decision would seriously prejudice the appellees as they were given no opportunity to protect their interests or minimize their potential liability prior to or during the first New York trial. Thus, during that time, they were denied the occasion to effect a favorable settlement or successfully defend against Halecki's claim. It is not enough to say that they were given this opportunity later on—the appropriate time had already passed. The shipowner, on the other hand, suffered no substantial harm by the district court's decision. It admitted in the district court that it could submit the same evidence in the New Jersey action as it did in the New York action. It does not contend otherwise in this court.

Accordingly, as the defendants in this indemnity action were not timely vouched in, and were, therefore, under no duty to participate in the third New York trial, we hold that they are not bound by the findings in the New York action. Appellants will be granted a new trial, but those facts necessary to show that the appellees breached their warranty must be proved without resorting to the record of the New York litigation.

Since it is a question of fact whether K. & S. breached its warranty, this determination should have been left to the jury. The undisputed evidence disclosed that K. & S. had control over the method and manner in which the work was done. Doidge testified that he and Halecki had often cleaned generators by using carbon tetrachloride but that they ordinarily divided the spraying time between them. On the fateful day, however, Doidge did not participate in spraying the generators because he had an injured wrist. Halecki, therefore, was exposed to the highly dangerous fumes for double the usual time. The carbon tetrachloride and the gas masks which the men used were supplied by K. & S. Both Doidge and Kuntz, the president of K. & S., testified that the gas mask given Halecki was a war surplus model. Both stated that they had no knowledge as to how long a mask of that kind could be safely used, yet both knew that it was dangerous to inhale carbon tetrachloride. A chemist who testified as an expert witness on behalf of the Pilots Assn stated that the gas masks used and supplied by K. & S. were not the proper type and would have been inadequate after an hour's use. He stated that three and one-half hours was too long a period for Halecki to be exposed to carbon tetrachloride. It was his opinion, based upon the description given by Doidge, that the blowers had been placed too far from the area where Halecki was working, and that the air hoses and other equipment were inadequate to properly ventilate the engine room. This testimony, if believed, would require a finding

---

**8.** For other sources discussing the attributes of a timely notice see Restatement of Judgments § 107, comment (e) at 515 (1942); 1 Freeman on Judgments § 449 (5th ed. 1925); 30A Am.Jur., Judgments § 420 (1958); 50 C.J.S. Judgments § 812 (1947).

that K. & S. breached its warranty to perform the work safely. See Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., supra. It was therefore error not to submit the case to the jury.

## IV

 Both in this court and in the district court, Rodermond has steadfastly contended that it did not warrant that it would perform the electrical repairs in a workmanlike manner because, to everyone's knowledge, it did not have the facilities to do electrical work. This argument, while superficially appealing, glosses over the fact that Rodermond contracted with the Pilots Assn to do *all* the repairs aboard the New Jersey, and with respect to the electrical repairs, we think that Rodermond impliedly warranted that the work would be done in a safe and proper manner. The question, therefore, narrows to one of whether Rodermond could avoid this contractual obligation by engaging a subcontractor to perform the highly dangerous task of cleaning the generators with carbon tetrachloride. We think not. In our view, Rodermond comes within the rule, as enunciated by § 160(4) of the Restatement of Contracts (1932), that

"Neither the delegation of performance by an obligor, nor a contract with the obligor by the person to whom the performance is delegated to assume the obligor's duty, extinguishes it or prevents recovery of damages from him if the duty is not performed."

Since there was no requirement that it had to personally perform the electrical repairs, Rodermond could delegate this duty to K. & S., but Rodermond could not thereby relieve itself of its obligation to indemnify the Pilots Assn if the latter suffered damages due to the improper manner in which the work was done. See generally 3 Williston, Contracts § 411 (3d ed. Jaeger 1960). Furthermore, as noted by Judge Medina in Halecki v. United New York & N. J. Sandy Hook Pilots Ass'n, 302 F.2d 840, 842 (C.A.2, 1962),

the cleaning of the ship's generators with carbon tetrachloride was "an operation inherently dangerous to human safety." Such being the case, Rodermond could not automatically exonerate itself by employing an independent contractor, and if it is found that the work was not safely done, the culpability of K. & S. can be imputed to Rodermond. See Schultz & Lindsay Construction Co. v. Erickson, 352 F.2d 425 (C.A.8, 1965); Fegles Construction Co. v. McLaughlin-Construction Co., 205 F.2d 637 (C.A.9, 1953); Person v. Cauldwell-Wingate Co., 176 F.2d 237 (C.A.2), cert. denied, 338 U.S. 886, 70 S.Ct. 189, 94 L.Ed. 544 (1949).

## V

 Rodermond contends that if it violated a contractual obligation to the Pilots Assn, the violation occurred and the cause of action accrued in 1951, the year in which Halecki died. Reasoning from this premise, Rodermond asserts that either the New Jersey six year statute of limitations, N.J.Stat.Ann. 2A:-14–1, or the maritime doctrine of laches bars the instant action, as the Pilots Assn did not file suit against the contractors until 1964, thirteen years after Halecki's death. The district court did not reach this issue, but in light of what we have already decided it is necessary for us to do so.

As with the other issues raised on this appeal, this question must be decided in accordance with maritime principles. And since there is no federal statute of limitations controlling this action, the proper measure of time within which suit had to be commenced is the maritime doctrine of laches. See Oroz v. American President Lines, Ltd., 259 F.2d 636 (C.A. 2, 1958), cert. denied, 359 U.S. 908, 79 S.Ct. 584, 3 L.Ed.2d 572 (1959); Prol v. Holland-America Line, 234 F.Supp. 530 (S.D.N.Y.1964). In deciding whether maritime claims are barred by laches, courts may, after "first considering all the circumstances bearing on the issue," consult relevant state statutes of limitations. Czaplicki v. The Hoegh Silver-

cloud, 351 U.S. 525, 533, 76 S.Ct. 946, 951, 100 L.Ed. 1387 (1956). If the local statute of limitations has not run, it is generally presumed that the defendant has not been prejudiced; if it has run, the converse is presumed. Oroz v. American President Lines, Ltd., supra; Prol v. Holland-America Line, supra.

▮▮▮▮ The New Jersey statute of limitations provides, in relevant part, that a "contractual claim or liability, express or implied, * * * shall be commenced within 6 years next after the cause of any such action *shall have accrued.*" (Emphasis added.) N.J.Stat. Ann., supra. The general rule, applicable to this case, is that a claim for indemnity does not accrue until the indemnitee's liability is fixed by a judgment against or payment by the indemnitee.[9] Thus, the date most particularly relevant to the disposition of this issue is not September 29, 1951, when Halecki suffered his injury, but October 8, 1962, when the supreme Court denied the Pilots Assn's petition for certiorari, and thereby finalized the shipowner's liability to Halecki's estate. October 8, 1962, therefore, is the earliest possible date for determining the accrual of the instant cause of action. On March 19, 1964, less than two years later, the Pilots Assn filed its claim for indemnity against the appellees. It is clear, then, that this suit was commenced well within the six year period allowed by the New Jersey statute of limitations. Rodermond has failed to show any prejudice resulting from the expiration of this short period of time, and since the mere passage of time does not of itself constitute prejudice, Gardner v. Panama R.R., 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31 (1951), we hold that there is no basis for the defense of laches.

We have carefully considered the remaining issues raised by the respective parties and deem them lacking in merit.

Accordingly, the judgment of the district court will be reversed and the cause remanded to the district court for further proceedings not inconsistent with this opinion.

**9.** See Mack Trucks, Inc. v. Bendix-Westinghouse Automotive Air Brake Co., 372 F.2d 18 (C.A.3, 1966), cert. denied, 387 U.S. 930, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967); Hidick v. Orion Shipping & Trading Co., 157 F.Supp. 477 (S.D.N.Y. 1957), aff'd, 278 F.2d 114 (C.A.2), cert. denied, 364 U.S. 830, 81 S.Ct. 67, 5 L.Ed. 2d 56 (1960); 3 Moore's Fed.Prac. ¶ 14.09 (2d ed. 1967).