**MOORE–McCORMACK LINES, INC.,**
**Plaintiff,**

v.

**SHIN MITSUBISHI HEAVY INDUS-**
**TRIES, LTD., Defendant.**

**No. 70 Civ. 3511.**

United States District Court,
S. D. New York.

Aug. 13, 1971.

Satterlee & Stephens, New York City, for plaintiff by James F. Dwyer, Henry J. Formon, Jr., Joseph Silvestri, Winona T. Read, New York City, of counsel.

Reid & Priest, New York City, for defendant by C. F. Schirmeister, S. F. Tsuchida, and J. E. Brumm, New York City, of counsel.

CROAKE, District Judge.

### MEMORANDUM

This action was instituted on August 14, 1970, to recover damages suffered as a result of defendant's alleged breach of a contract to repair plaintiff's ship. Breach of warranty and the right to indemnification are also asserted. The present motion by defendant seeks summary judgment and dismissal of the complaint. It will be denied, for the reasons indicated below.

The facts, briefly, are as follows. Plaintiff's predecessor in title to the vessel SS NATIONAL SEAFARER (ex JACQUELINE SOMECK), and later plaintiff, contracted with defendant for extensive repairs to the vessel. Defendant was eventually paid $235,085 for its work, completed in early 1964. While the repairs were in progress, plaintiff contracted to sell the ship to Windward Steamship Corporation ("Windward"). Accordingly, when the ship was tendered to plaintiff, it remained at defendant's premises until Windward's crew arrived to take possession.

Various operating difficulties immediately appeared, and Windward suffered a considerable loss when the vessel broke down at sea in the middle of her first post-repair ocean voyage. Windward thereupon asserted a claim against plaintiff, and eventually invoked the arbitration clause in the contract of sale.

Plaintiff, in turn, informed defendant of the existence of Windward's claim and of the impending arbitration proceedings, and unsuccessfully sought to have defendant assume the defense of the arbitration. Subsequently, plaintiff kept defendant informed of the current status of the arbitration, sought its advice regarding a settlement offer, and generally attempted to preserve its right to "reimbursement." Defendant, meanwhile, refused to become actively involved in the arbitration, and consistently denied "any intention to accept any claims or reimbursement." Defendant did, however, permit limited investigation of certain of its employees "without prejudice."

The first arbitration testimony was taken on April 18, 1966; the final award was not made until June 5, 1970. Judgment was entered in New York State Supreme Court, New York County, on this award, in the amount of $269,240.10, on June 25, 1970, and paid in full by plaintiff. This action was then instituted.

The complaint contains two causes of action denominated as such. The first alleges an action for indemnity, and also one for breach of implied warranty (para. 13th), while the second alleges a breach of contract.

■ The first cause of action also asserts that by reason of having been "vouched in" to the arbitration, defendant is now estopped from contesting anything beyond what was the scope of the arbitrated controversy, and what was actually adjudged in the award. However, the validity of this assertion is not at issue in this motion, for two reasons. First, this issue relates to the method and scope of proof of a claim, an issue for determination at trial, West Indian Co. v. SS Empress of Canada, 277 F.Supp. 1, 3 (S.D.N.Y.1967), rather than to the nature of the claim itself.

Second, it raises issues of fact: whether defendant in any way consented to be bound by the arbitration, and what was actually determined therein.

Defendant's argument in its present motion is that the first cause of action states no claim upon which relief may be granted, and additionally that both actions are time-barred. A preliminary dispute concerns which law, federal or state, is to be applied in determining the merits of the motion.

■ In so far as breach of warranty is concerned, the applicable law must be federal maritime law; the warranty if given and breached would necessarily have arisen out of a contract to repair a vessel, and such a contract is clearly a maritime contract:

> "There can be no doubt that federal maritime law affords a shipowner the right of indemnity against stevedores and other contractors for foreseeable damages resulting from breach of the implied warranty of workmanlike performance . . . it is now taken for granted that these implied contracts are maritime in nature."

United New York Sandy Hook Pilots Ass'n v. Rodermond Industries, Inc. ("*Rodermond*"), 394 F.2d 65, 70 (3rd Cir. 1968); *See also* A/S J. Ludwig Mowinckels Rederi v. Commercial Stevedoring Co., 256 F.2d 227, 229–230 (2d Cir. 1958), cert. dismissed 358 U.S. 801, 79 S.Ct. 9, 3 L.Ed.2d 49 (1959).

■ With reference to the action for indemnity, the same conclusion must be adopted, namely that federal maritime law is applicable. In the present case, plaintiff seeks indemnity because of its own liability based on arbitration of a state claim. However, the fact that plaintiff's "secondary" liability arose under state law does not alter the fact that defendant's "primary" liability, if any, results from defective work of a maritime nature. In this context it has been said,

> ". . . If we are to let state law govern . . . we would be ignoring both the general constitu-

tional doctrine of federal supremacy in maritime affairs [giving citations] and the need for uniformity in the administration of admiralty law." *Rodermond, supra,* 394 F.2d at 70.

It has also been noted that,

> "The issue . . . [is] whether [the underlying agreement is directly related to and in furtherance of maritime commerce. . . . Actions for indemnity arising out of all maritime transactions are obviously within the admiralty jurisdiction . . ."

Moore's Federal Practice ¶ 260 [4].

In this case it is conceded that defendant's contract to repair plaintiff's vessel was a maritime transaction; it is equally clear that the present action for indemnity arises out of that transaction. Federal law therefore applies.

■ On the merits of defendant's motion, on the question of whether plaintiff has pleaded a good cause of action for indemnity, the controlling decision is that of Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956, on rehearing). This case holds, *inter alia,* that absence of a written contract of indemnity will not defeat the action. *Ryan,* at 131–132, 76 S.Ct. 232. This is all that need be determined at this time; the nature of the implied contract of indemnity between the parties, and the validity of any defenses to it, involve questions of fact which must await trial for their resolution.

The last issue remaining for consideration is the staleness of plaintiff's claims, which are asserted for the first time more than six years after the occurrence of the alleged breaches of the repair contract and of the implied warranty.

■ The purpose of time limitations, such as laches in the present context, is to prevent unfair advantage from accruing to a claimant who waits until part or all of his adversary's evidence has deteriorated through loss of time or change in circumstance before asserting his claim, as contrasted with the claim-

ant who has sought prompt adjudication of his rights. The question is one of equitable discretion, involving the balancing of the persuasiveness of plaintiff's excuse against the severity of the prejudice to defendant from the delay.

■ Nevertheless, the starting point in the analysis is the analogical state statute of limitations, in this case six years; N.Y.C.P.L.R. § 213(2) (McKinney 1963). While the analogy is considered to be weaker than it once was, it is still the case where, as here, the statute has run, that detriment to the defendant will be presumed absent evidence to the contrary; and on a motion to dismiss, the plaintiff will have the burden of persuasion that his action is not stale. Redman v. United States, 176 F.2d 713, 715 (2d Cir. 1949); Oroz v. American President Lines, 259 F.2d 636 (2d Cir. 1958), cert. denied 359 U.S. 908, 79 S.Ct. 584, 3 L.Ed.2d 572 (1959); Larios v. Victory Carriers, Inc., 316 F. 2d 63, 65 (2d Cir. 1963); Conty v. States Marine Lines, Inc., 355 F.2d 26, 28n. (2d Cir. 1966).

■ On the present record, the court is satisfied that plaintiff's excuse far outweighs defendant's prejudice, if any, assuming for these purposes that the actions "arose" in 1964, when the breaches are alleged to have occurred. See Hidalgo Steel Co. v. Moore & McCormack Co., 298 F. 331, 334 (S.D.N.Y.1923). The correspondence exchanged between the parties demonstrates that they were aware that an arbitration award against plaintiff would generate this lawsuit; they evidently considered their dispute to be basically one for "reimbursement," when and if needed. Whether or not this was a complete and accurate analysis of the legal stature of plaintiff's claim, it was a good evaluation of the parties' interests and motivations. As such, it was proven accurate by the fact that the present complaint was filed less than two months after the final arbitration award. Defendant has clearly not been surprised by the institution of this suit.

As to all elements of both causes of action, it appears that the relevant evidence has always been in defendant's possession. The present record fails to demonstrate any particulars to substantiate defendant's claim that delay has reduced the availability of this evidence; in any event, defendant was adequately informed of the advisability of insuring against this eventuality through plaintiff's intimation that this lawsuit might eventuate. For that matter, plaintiff attempted for whatever reason to preserve the relevant testimony and documents, but was substantially frustrated in this regard by defendant. The conclusion, therefore, must be that, subject to trial review, of course, the equities clearly militate against imposition of the bar of laches.

Accordingly, defendant's motion is in all respects denied.

So ordered.