**THERMO KING CORPORATION, a corporation, Plaintiff,**

v.

**STRICK CORPORATION, a corporation, Defendant.**

Civ. A. No. 77–1332.

United States District Court, W. D. Pennsylvania.

March 19, 1979.

Robert W. Murdoch, Jones, Gregg, Creehan & Gerace, Pittsburgh, Pa., for plaintiff.

Thomas R. Wright, Pittsburgh, Pa., for defendant.

## AMENDED MEMORANDUM

COHILL, District Judge.

Plaintiff, Thermo King Corporation ("Thermo King"), brought a diversity action against defendant, Strick Corporation ("Strick"), to recover $15,000 that Strick had deducted from the purchase price of goods Thermo King sold to Strick in early 1974. In its answer, Strick admitted all factual allegations of the complaint but asserted a $15,000 indemnity counterclaim against Thermo King arising from an unrelated, separate transaction.

This separate transaction involved Thermo King's sale in December, 1970 of allegedly defective truck refrigeration units to Strick; Strick installed the units in trucks and sold them to Quinn Freight Lines, Inc. ("Quinn") in May, 1971. Quinn asserted that the faulty refrigeration units caused Quinn's loss of $15,000 worth of cargo, as well as higher than normal maintenance, supervisory and surveillance costs.

Quinn never sued Strick, but in December, 1974, Strick settled Quinn's claim by crediting Quinn's account for $15,000. On the theory that Thermo King, as the original manufacturer of the refrigeration units, was primarily liable to Quinn, Strick set off the $15,000 against the purchase price for the acceptable goods Thermo King had shipped to it in 1974.

Thermo King moved for summary judgment on its claim and on Strick's counterclaim, contending that the counterclaim is barred by either the four year statute of limitations applicable to actions for breach of any contract for sale, 12A P.S. (UCC) § 2–725, or the six year limitation for contract actions in general.

Strick, on the other hand, argues that it has six years from the December, 1974 settlement in which to bring an action for Thermo King to indemnify it for the settlement amount on the basis of Thermo King's primary liability to Quinn for breach of warranty, negligence or strict liability.

By memorandum and order dated December 22, 1978, we granted summary judgment in favor of Thermo King. On Strick's motion, we now reconsider that decision.

■■■ We agree that a distributor may have a right to have the manufacturer of defective goods indemnify it for liability that the distributor incurs to the ultimate purchaser of the goods.[1]  *See, e. g., United*

New York Sandy Hook Pilots Ass'n v. Rodermond Industries, 394 F.2d 65 (3d Cir. 1968); Mack Trucks, Inc. v. Bendix-Westinghouse Automatic Air Brake Co., 372 F.2d 18 (3d Cir. 1966), cert. denied, 387 U.S. 930, 87 S.Ct. 2053, 18 L.Ed.2d 992 (1967). Due to its contractual nature, a claim for indemnity is governed by the statute of limitations applicable to contract actions, *United New York Sandy Hook Pilots Ass'n v. Rodermond Industries, supra; Mack Trucks, Inc. v. Bendix-Westinghouse Automatic Air Brake Co., supra,* which in this case specifies a limitation of six years after the cause of action accrues. 12 P.S. § 31. An indemnity claim does not accrue until the indemnitee's liability is fixed by a judgment against, or payment in settlement by, the indemnitee. *United New York Sandy Hook Pilots Ass'n v. Rodermond Industries, supra; Mack Trucks, Inc. v. Bendix-Westinghouse Automatic Air Brake Co., supra;* 3 Moore's Federal Practice ¶ 14.09 (2d ed. 1967). Thus, Strick had six years from its December, 1974 settlement payment to Quinn to pursue any right it had to indemnity by Thermo King.

■■ This right to indemnity, however, is predicated on Thermo King's primary liability to Quinn. The main basis that Strick asserts for Thermo King's underlying liability is the breach of implied warranties of merchantability and fitness for a particular purpose. UCC §§ 2–314, 2–315. These implied warranties can be modified or excluded, however, in the case of a writing, by appropriate "conspicuous" language. UCC § 2–316(2). Whether language is "conspicuous" under this section is a question of law for the court. UCC § 1–201(10). The test is whether a reasonable person against whom the modification or exclusion is to operate ought to have noticed it.  *Id.*

1. We note in passing that depending on the specific days on which Thermo King in December, 1970 delivered the allegedly defective units to Strick and on which Strick in December, 1974 settled the claim with Quinn, at the time the settlement was made Quinn arguably had no enforceable claim against Thermo King due to the four year statute of limitations, UCC

2–725. The question would then arise whether Strick would be entitled to indemnity from Thermo King for paying a claim unenforceable as to Thermo King. Because we conclude that Thermo King was not, on the merits, liable for the claim Strick paid, however, we need not consider this question.

■ The parties apparently agree that the language of Thermo King's warranty card (*see* Exhibit A to Thermo King's Reply to Counterclaim) is determinative of Thermo King's liability for the defective refrigeration units under the provisions of the Uniform Commercial Code, as well as under theories of negligence and strict liability. Reply to Counterclaim, ¶ 11, Brief of Thermo King at 5; Brief of Strick at 5. Although Strick, after entry of summary judgment, has attempted in its brief to retreat from this position, we will not allow it to shift ground on a matter of importance at this stage, and certainly not without the showing required by Fed.R.Civ.P. 56(e).

■ Having inspected the warranty card, we are satisfied that the warranty card contained appropriate "conspicuous" language within the meaning of § 2–316(2) that excluded the implied warranties. On the front side of the customer copy of the warranty card clearly appear the words "(See reverse side for warranty)." On the back, under the heading "MANUFACTURER'S WARRANTY," the fourth of six short paragraphs begins as follows: "THIS WARRANTY IS EXCLUSIVE AND IN LIEU OF ANY WARRANTY OF MERCHANTABILITY, FITNESS FOR PURPOSE, OR OTHER WARRANTY OR QUALITY, WHETHER EXPRESSED OR IMPLIED, AND OF ALL OTHER LIABILITIES AND OBLIGATIONS ON THE MANUFACTURER'S PART." No other language in the warranty appears in all capital letters. We conclude, therefore, that such language is "conspicuous," since a reasonable person should have noticed and understood it.

■ This exclusion of implied warranties is distinguishable from the one held not conspicuous in *Salov v. Don Allen Chevrolet Co.,* 55 D. & C.2d 180 (Pa.C.P.1971), cited by Strick. There the purported exclusion was on the reverse side of an automobile sales contract, and the language on the front side referring to the clause was much smaller than any other language on that side. The language of exclusion was the tenth of twelve paragraphs, and only slightly larger, darker and more slanted than other print on the page, and capitals were used freely on the front side. Id. at 183–84.

The terms of Thermo King's express warranty (*see* UCC § 2–313(1)(a)) and limitation of remedy (*see* UCC § 2–719) are stated clearly:

"Subject to the conditions hereinafter stated, the Manufacturer (Thermo King Corporation) warrants its equipment to be free from defects in material and workmanship for a period of 90 days from the date of original installation. This warranty extends only to the original owner of the equipment and is limited to repair or replacement (at Manufacturer's option) at any of its authorized service agencies of any part or parts which are returned to the Manufacturer by the service agency, and which, on Manufacturer's examination, will conclusively appear to have been defective.

\*      \*      \*      \*      \*      \*

\* \* \* The manufacturer neither assumes nor authorizes any other person to assume for it any obligations or liabilities except as herein expressed.

The Manufacturer is not responsible, and will not be held liable, for special, indirect or consequential damages, including injury or damage caused to trailers, contents, product cargo or persons, by reason of the installation of any Thermo King product or its mechanical failure."

Thus, Termo King warranted only that its materials would be free from defects in material and workmanship, limited the customer's remedy to Thermo King's repair or replacement of any defective parts, and excluded consequential damages, which specifically comprised damage to contents and product cargo. In this situation involving corporate parties, we see no reason for such a clear and obvious exclusion of consequential damages to be considered unconscionable. *See* UCC § 2–719(3). Strick concedes that after Thermo King was notified of the defect, it did promptly "undertake to correct, remedy and repair the defective refrigeration units." Affidavit of Sherwin

Ginsberg, filed December 12, 1978, at ¶ 4; *see also* Answer and Counterclaim, ¶ 15. It is undisputed, therefore, that as we have construed the warranty card, Thermo King incurred no liability to Quinn stemming from any warranty, express or implied.

 Strick argues that Thermo King alternatively would have been liable to Quinn on the basis of negligence and strict liability. In Pennsylvania a party may exculpate itself from liability under both. *See, e. g., Keystone Aeronautics Corp. v. R. J. Enstrom Corp.,* 499 F.2d 146 (3d Cir. 1974); *Employers Liability Assurance Corp. v. Greenville Business Men's Ass'n,* 423 Pa. 288, 224 A.2d 620 (1966). In *Keystone Aeronautics* the Third Circuit instructed that language purporting to exculpate one from both negligence and strict liability must " 'clearly and unequivocally spell out the intent to grant such immunity and relief from liability.' " 499 F.2d at 150.

 Although the language in the warranty card here is similar in many respects to the language discussed in *Keystone Aeronautics,* we think that the following language, which is not found in the writing in *Keystone Aeronautics,* expresses Thermo King's clear intention to exculpate itself from either its own negligence or strict liability:

> "The Manufacturer is not responsible, and will not be held liable, for special, indirect, or consequential damages, including injury or damage caused to trailers, contents, product cargo or persons, by reason of the installation of any Thermo King product or its mechanical failure."

*See also Zimmer v. Mitchell and Ness,* 253 Pa.Super. 474, 385 A.2d 437 (1978) (allocatur granted, July 25, 1978). Strick, therefore, has no primary liability to Quinn based on breach of warranty, negligence or strict liability.

 We conclude, therefore, that Thermo King had no liability for the damages that Quinn claimed and that Strick paid. Accordingly, Strick has no right to indemnity from Thermo King for Strick's settlement payment, and therefore Thermo King's motion for summary judgment on the counterclaim will be granted.

Because Strick has admitted in its answer all factual allegations of the Complaint, Thermo King's motion for summary judgment on its claim will be granted as well.

An appropriate order will be entered.