## Wagaman v. Don Warner Chevrolet-Buick, Inc.

*Kenneth L. Rotz,* for plaintiff.
*Catherine J. Gault,* for defendants.

SPICER, *P.J.,* February 26, 1981—This is a suit in assumpsit for the breach of implied warranties of merchantability and fitness for a particular purpose and in trespass for alleged misrepresentations which denied plaintiff the ability to procure suitable insurance.

From allegations appearing in the complaint, it appears plaintiff purchased a truck from defendant on February 8, 1979. Plaintiff intended to and did use the truck in his business. While hauling scrap, the truck's engine "seized" and eventually had to be replaced. Defendant performed repair work and refused to release the truck until plaintiff paid his bill for $1,624.59.

During the time required for repairs, plaintiff claims he was forced to replace the truck and expended $2,175.

At the time of purchase, plaintiff also purchased a Mechanical Service Agreement. He claims that defendant told him the service agreement would cover costs of repair and induced him to purchase the service agreement. Actually, plaintiff avers, the service agreement did not cover costs of repairs and

defendant knew it did not at the time defendant made false representations to the contrary. When plaintiff had the truck repaired, defendant attempted to rescind the service agreement by returning the premium.

Plaintiff seeks reimbursement for costs of repairs, replacement expenses, and the cost of the premium. The damages total $4,003.59. Plaintiff, however, demands judgment in excess of $10,000.

Defendant has demurred to the complaint. Two demurrers are not significant enough to discuss at great length and we will dispose of them rather summarily.

The first of these is that the damages averred do not justify a demand for a sum in excess of $10,000. We agree and order that the complaint be amended to demand the amount of actual damages, $4,003.59.

The second is based upon plaintiff's failure to attach the entire Mechanical Service Agreement to the complaint. Defendant claims that a portion showing actual purchase has not been attached. In the absence of such portion, defendant argues that the complaint does not sufficiently aver that the agreement was purchased.

Plaintiff's cause of action is not based upon the service agreement but upon misrepresentations. That being so, there is no requirement that the agreement be attached. The body of the complaint contains clear and concise allegations that plaintiff purchased the agreement. This demurrer is overruled.

The third demurrer requires more consideration.

Plaintiff has attached to the complaint a copy of the installment sales agreement under terms of which the truck was purchased. This agreement excluded warranties the breach of which form

plaintiff's cause of action in Count I. Plaintiff argues, however, that the exclusion or disclaimer of such warranties is inoperative as a matter of law.

In order to decide this issue it will be necessary to examine this particular sales agreement in light of the provisions of the Uniform Commercial Code, more specifically, 13 Pa.C.S.A. § 2316. This section requires that any language in a contract such as this which seeks to modify or exclude implied warranties of merchantability or fitness for a particular purpose must be conspicuous.

Although the definition of "conspicuous" does not ordinarily include "understandable," there is language in at least one case that might suggest it does. In Thermo King Corp. v. Strick Corp., 467 F. Supp. 75 (W.D. Pa. 1979), the court held that language was conspicuous because it should have been noticed and understood by a reasonable person.

In the case before us, the sales agreement consisted of two pages printed on two sides of one sheet. Only the first page was signed. The first page had numerous provisions in heavy, bold print and numerous parts printed all in capital letters. At the top of the agreement, in ordinary type, appeared the following:

The seller hereby sells, and the buyer (meaning all undersigned buyers, jointly and severally) hereby purchases, subject to the terms set forth below and upon the reverse side hereof, the following property delivery and acceptance of which in good order are hereby acknowledged by buyer, viz.:

The reverse side of the agreement consisted of a page of printed provisions under a title, printed in bold type reading, "ADDITIONAL TERMS." Paragraph 7 of those terms is also in bold type and reads as follows:

"It is mutually understood and agreed that: (a)(1) if said property is principally used for business or agricultural purposes, or (2) if buyer is clearly informed in writing prior to the sale that the property is sold on an 'as is' basis and that the entire risk as to the quality of performance of the property is with the buyer, there is no implied warranty of merchantability, no implied warranty of fitness for a particular purpose and no implied warranty which extends beyond the description of said property on the face hereof; (b) except where the seller is also the manufacturer of said property and, as such manufacturer, issued to buyer or to a prior buyer of said property said manufacturer's separate written new product warranty in respect thereof and said warranty is in effect at the date hereof, there are no express warranties and no representations, promises or statements have been made by seller in respect of said property unless endorsed hereon or incorporated herein by reference hereon; but seller's obligations under any express warranty made and evidenced as aforesaid shall continue in accordance with the terms thereof and regardless of whether seller shall have transferred and assigned to another seller's rights hereunder; and (c) except where the seller is also the manufacturer of said property, buyer will not assert against any subsequent holder as assignee of this contract any claim or defense which the buyer may have against the manufacturer or a seller other than the seller of said property obtained pursuant hereto."

Whether or not an exclusion or modification must be understandable, burying the same in a profusion of words may operate to hide and to make it inconspicuous.

The print in Paragraph 7 is certainly large enough to make it stand out. The paragraph is somewhat long and somewhat complicated by virtue of the several conditions it attempts to cover. Nonetheless, the court feels that once a reasonable person's attention is directed to it because of the bold print, a little time and patience unravels its meaning. Its meaning is that the warranties upon which plaintiff sues are excluded if the truck is used principally for business purposes.

Therefore, the court rules that the exclusion is conspicuously set forth on the reverse side of the agreement. The question then becomes whether it loses this quality by being on the reverse side of the agreement.

If plaintiff had been required to have signed the reverse side, it could more easily be concluded that he should have noticed Paragraph 7. Whether he should have noticed Paragraph 7 under the facts of this case depends upon an application of common sense to this particular agreement.

The Allegheny County Court in Salov v. Don Allen Chevrolet Co., Inc., 55 D. & C. 2d 180 (1971), held that a disclaimer also on the reverse side of an agreement was not conspicuous. It is not absolutely clear from the opinion that the reverse side was unsigned, but it appears it was not. The words of incorporation were on the bottom of the first page and were printed in much smaller type than other provisions on that page. Additionally, the court observed that the exclusion was not printed in type substantially different from other parts of the contract.

Thus, the facts of the case before us are significantly different in several respects. The incorporating language of the sales agreement before us ap-

peared at the beginning of the agreement and the second page sets forth in bold type that the provisions were additional terms. The exclusion itself is in bold type.

Considering the agreement as a whole, we hold that a reasonable person should have noticed and understood the provisions of Paragraph 7.

Therefore, the attached order will be entered.

## ORDER

And now, February 26, 1981, defendant's demurrer to Count I is sustained and that count dismissed. The complaint is amended to demand damages in the sum of $4,003.59 together with legal interest. All other objections are dismissed.

It appearing that plaintiff may not be able to state a cause of action as to Count 1, no right of amendment is granted.

Defendant shall have 20 days in which to file an answer to the complaint, as modified by this order.