## Case No. 9,226.

### The MARY STEELE.

[2 Lowell, 37.] [1]

District Court, D. Massachusetts. Dec., 1874.

COLLISION—DAMAGES—PROBABLE PROFITS — FISHING VOYAGE.

1. In assessing damages for a collision, a fishing-boat, making weekly trips or voyages for the market, which has lost a trip as the necessary result of the injury, may be allowed the probable profits of the trip.

[Cited in The Iberia, 46 Fed. 303.]

2. These may be allowed when the only actual injury was to a seine, which could neither be repaired nor replaced in less time than a trip would require, and which was of so great value, that to assess it as a total loss would exceed the damage incurred by the loss of the trip.

Libel by the owners and crew of the schooner Hattie N. Reed, of Swampscott, and by the owners of a large and valuable seine used in connection with said schooner in the mackerel fishery, against the schooner Mary Steele, of Wellfleet. The allegations were, that all the libellants were associated together in the fishing business upon the coast of New England, dividing the catch in certain definite proportions; that the crew were engaged on the thirtieth day of July, 1874, at noon, in casting the seine about a school of mackerel, at a point near Boothbay, on the coast of Maine; that many vessels were in the neighborhood, and among them the Mary Steele; that the latter vessel came down before the wind near to the seine, and suddenly changed her course and shot directly into the seine, and damaged it, rendering it useless, so that the libellants were obliged to carry it to Boston to be repaired, whereby they lost their trip and were detained one week, and suffered damage to the amount of $1,000, besides the cost of repairing the seine.

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

The answer, admitting the collision, alleged that it happened without fault of the Mary Steele.

C. P. Greenough, for libellants.
F. Dodge, for respondents.

LOWELL, District Judge. The responsibility for the collision is upon the Mary Steele. She began by trying for the same school of fish; but seeing that the other schooner had the first right, her boats lay near by, hoping to catch the fish if they should escape the libellants. All of the crew, excepting the ship-keeper and a boy, were thus engaged in the boats, and the schooner was keeping near her boats, for convenience. Of course, it was for the schooner, while under way, to keep clear of the boats that were casting a seine, and the only excuse given for a failure to comply is, that the vessel missed stays. But if she was on such a course as to need to go about in order to avoid the seine, she is bound to take the risk of missing stays, as there was nothing in the wind or sea that can account for the misfortune, and make it, in law, an inevitable one.

The most serious question in the case is that of damages. These seines, it seems, are large and valuable, costing nearly as much, perhaps, as some fishing schooners. In this case the ship drew one-fourth, and the seine one-sixth of the catch. The libellants' counsel has cited many of the latest cases to the point, that where the voyage or business of a vessel is broken up, the probable profits may be given as damages for detention, if the character of the trade is such that an ordinary allowance in the nature of freight would not meet the justice of the case. The Cayuga [Cases Nos. 2,535, 2,537]; 14 Wall. [81 U. S.] 270; The Favorita [Cases Nos. 4,694, 4,695]; Id., 18 Wall. [85 U. S.] 598; and other cases, where the loss of the probable earnings of a ferry-boat, and other damages of like nature, have been allowed.

The objection taken to this allowance resolves itself into two: (1) Whether any damages should be assessed for the loss of the use of the seine; and (2) whether they should be assessed in the mode asked for by the libellants. It is proved that the Hattie N. Reed was a market-boat, accustomed to make trips which averaged about a week in length, bringing to Boston fresh fish for immediate sale, netting from $700 to $1,000 for a trip. She was fitted with ice and various other appliances, and, among others, with this seine, and with hooks and lines. At this time the fish would not bite freely, and must be caught in the net, or not at all. Without the seine the trip was certain to fail, and when it was damaged, the master thought best to carry it to Boston to be repaired.

There was some conflict in the evidence as to whether the seine could have been mended at Boothbay. Upon the whole evidence, I think the preponderance is that the work could not be done there to any better advantage, in point of time, than at Boston.

Under these circumstances, is the Mary Steele bound to pay for a broken voyage, or only for the immediate injury to the seine? It seems a hardship that a damage of $45 to a net should involve some hundreds of dollars by way of loss of the use of the net. Supposing a boat had been stove, would that carry like consequences, on the ground that the seine could not be set without a boat? And suppose a thole-pin in the boat were broken, is the voyage to be paid for?

The answer is, that the injury or destruction of any thing which cannot be replaced, and which entails the loss of the voyage, however insignificant the thing itself may be, will often carry with it damages for the loss which is its necessary consequence. A comparatively small injury might sometimes oblige a considerable deviation and delay, such, for example, as the loss of all the nautical instruments. The damages would not be the mere value of these instruments on shore, if the consequence is a further loss occasioned by the necessity of supplying them.

It is true that in collision cases loss of profit on the cargo is not allowed; but this is an old rule, which Mr. Sedgwick considers out of harmony with recent decisions. Sedg. Dam. (4th Ed.) 541, note 1. The loss of profits of a voyage is assessed in the form of freight and demurrage, and the mode of estimating cargo, while it does not give profits, gives interest instead. The general rule now is, that, in actions like trespass, profits may be assessed if they were reasonably certain to have accrued, and that they have been destroyed by the trespass; and in the case of a voyage broken up we have this certainty, because the enterprise is in such a state of forwardness that its results may be foreseen.

In salvage cases, which are neither contract nor tort, the probable profits of a fishing voyage which has been lost are sometimes allowed, if the voyage had already been entered on. It is said that if the loss of the voyage will be very great, and the danger is not of the most pressing kind, the master of the fishing-vessel ought to warn the master of the vessel in distress of the great expense he is incurring. But this is a consideration which cannot apply in collision. See The Salacia, 2 Hagg. Adm. 262; The Louisa, 3 W. Rob. Adm. 99; The Hedwig, 1 Spinks, 24, and note a; The Norden, Id. 185.

If a contract had been made to furnish this seine off the coast of Maine, the contractor being informed that the vessel and men would be waiting to receive it, the damages for not delivering would be the probable profits that were lost by the failure to deliver, because this loss must have been foreseen by the parties. Taken either as being a consequence sufficiently direct to be within the expectation of any one dealing in the

subject-matter, or as being, in this particular case, unavoidable, I think profits may be recovered for the loss of the use of the seine.

Then as to the time. If the seine were an instrument of small value, damages could not be allowed for waiting to have it repaired, when it might have been replaced at less cost than that of the demurrage. But that, I understand, is not the case. Its value was more than the damages sued for.

As to the mode of ascertaining the value of the time lost, there seems to be no other that can be applied than the profitable profits. The schooner had a much larger number of men than merchant vessels carry, and different outfits. There is no customary rate of hire or market price for such vessels, and cannot be, from the mode in which the business is conducted. The precedent of the ferry-boat seems to be a strong one, because the reasons are the same.

It was stated by the libellants' witnesses that their trip was not a total failure, for they had caught thirty barrels of mackerel that morning, which they sold in Boston for about $300. In estimating the lost trip less the salvage, I think I ought to take a rather low average, and I accordingly assume that a trip would be worth $800; and, deducting the $300, we have $500 as the damages, besides the cost of repairs, which is $45, making $545 and costs. Decree accordingly.