## Case No. 1,298.

### The BENEFACTOR.

[14 Blatchf. 254.] [1]

Circuit Court, E. D. New York. June 11, 1877.[2]

COLLISION—STEAMER AND SCHOONER—DANGEROUS PROXIMITY—FAILURE TO CHANGE COURSE.

A collision took place between a steamer and a schooner on the open sea, in clear weather, in broad daylight, the vessels seeing each other at a distance of seven or eight miles and for twenty minutes or half an hour. The schooner did not change her helm except in the moment of peril, when her master attempted to port, but did not succeed, and was compelled to abandon his wheel: *Held*, that the steamer was in fault in attempting to pass the schooner at too short a distance off, and that the schooner was free from fault.

[Cited in The Raritan, 32 Fed. 848; The Beta, 40 Fed. 900.]

[See note at end of case.]

[Appeal from the district court of the United States for the eastern district of New York.

[In admiralty. Libel in rem by the owners of the schooner Susan Wright against the steamship Benefactor (the New York & Wilmington Steamship Company, claimants) for collision. A separate libel was filed by the crew of the schooner for the loss of personal effects, and a petition of intervention by the owners of the schooner's cargo to recover value of the same. Decree for libellants and interveners, the damages in the aggregate being assessed at $61,810.49. Case No. 1,297. Claimants appeal. Affirmed.

[Subsequently an appeal was taken to the supreme court by the claimants, and the judgment of the circuit court was affirmed. The Benefactor, 102 U. S. 214. For proceedings on the part of the claimants to limit their liability pursuant to Rev. St. § 4283, and the fifty-fourth admiralty rule, see Case No. 10,200, 103 U. S. 239, 247.]

This was an appeal from a decree of the district court, in admiralty, in favor of the libellants, in a suit in rem against the steamship Benefactor, in a cause of collision. This court made the following findings of fact: The collision between the steamship Benefactor and the schooner Susan Wright, in controversy in this suit, took place a little after ten o'clock in the forenoon of the 26th day of February, 1875, off Squam beach, New Jersey, and about three miles distant therefrom. The weather, at and prior to the time of the collision, was fine and clear, and the wind about west northwest and strong. The steamship was bound from New York to Wilmington, and the schooner from Matanzas to New York. The steamship was observed by those in charge of the schooner when six or seven miles distant therefrom, and from twenty to thirty minutes before the

collision. At that time the steamship bore a point or two off the starboard bow of the schooner. The schooner was close-hauled, sailing on a course about north by west, at the rate of about eight miles an hour. The steamship was proceeding on a course about south southwest, at the rate of about ten miles an hour, with her sails set, and the wind free, and making much leeway. At this time the courses of the two vessels were such as to cross each other, if continued, and such as to bring the two vessels either together or into close proximity to each other, and the two vessels were proceeding in such directions as to involve risk of collision. On the windward side of the two vessels, and about three miles distant therefrom, was the New Jersey shore, trending, at that point, about north by east and south by west, and on the leeward side was the open ocean, without any obstruction to safe navigation. There was nothing to prevent the steamship from seasonably changing her course so as to pass either to windward or to leeward of the schooner and give her a wide berth. From the time when the steamship was observed, as above stated, she was watched by those in charge of the schooner, and the schooner was kept close-hauled upon her course. The steamship was also kept upon her course, without slacking speed or stopping, until the vessels were only a few lengths apart and a collision was imminent, when the peak of her mainsail was lowered, her engines were slowed and stopped, and an effort was made to pass to leeward of the schooner, but without success. After the steamship was within a few lengths of the schooner and a collision was imminent, the captain of the schooner attempted to avoid the impending collision or lessen its force, by porting the helm of the schooner, but, after putting the schooner's wheel only about two spokes to port, he was driven away therefrom by the nearer and dangerous approach of the steamship, which struck the schooner on her starboard quarter, in consequence of which the schooner sank almost immediately, with her cargo. The schooner kept her course until the steamship was in close proximity and the collision was imminent, and, if there was any change in the schooner's course after that, and before the collision actually took place, it was very slight, had no effect in producing the collision, and was made in extremis.

Beebe, Wilcox & Hobbs, for libellants.
Owen & Gray, for claimants.

HUNT, Circuit Justice. Nothing can be more clear than that the occurrence of a collision between a steamer and a schooner upon the open sea, in clear weather, in broad daylight, with no storms, the vessels sighting each other at a distance of seven or eight miles, and for twenty minutes or half an hour, was the result of a great negligence.

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and here reprinted by permission.]

[2] [Affirming The Benefactor, Case No. 1,297. Decree of the circuit court affirmed in The Benefactor, 102 U. S. 214.]

The duty of avoiding the collision belonged to the steamer, and she had the most abundant opportunity of doing it. The principal fault of the steamer was in not making the proper arrangement to avoid the schooner, when first discovered. A very slight deviation from her course would have made the divergence so marked as to avoid all peril or alarm, and would not have produced any perceptible effect upon her own voyage. Instead of that she pursued a course which, according to 'her own evidence, would have carried her to the windward of the schooner a cable's length only, or seven hundred and twenty feet. The wheelsman of the steamer testifies, that, after he took the wheel, the schooner was on his port bow, and he noticed that she kept off a little, (i. e., ported her helm, carrying her to the east;) and that the captain ordered him to port the helm which he says was done. He further says, that, if the schooner had kept this course and the steamer had kept her course, he would have passed the schooner on the port side, a cable's length from each other, that is, seven hundred and twenty feet. This, with vessels whose conjoined speed equalled eighteen miles an hour, was quite too close a calculation. An allowance of thirty seconds of time, which could be absorbed by a slight excess of steam or a slight increase of wind, is very far from an exercise of reasonable prudence. The presence of a large steamer in such close proximity might well disturb the composure of the navigation of a smaller craft.

There is really but a single question of fact in the case, to wit, whether the schooner so deviated from her course as to justify the action of the steamer. It is by no means clear that the evidence given by the mate, Norwood, establishes such a justification, but I am disposed to rely upon the evidence of the captain of the schooner, which is clear, consistent throughout, and in apparent harmony with all the circumstances of the case. If his testimony is credited, there was no change except in the moment of peril. He attempted to put his wheel a-port, but did not succeed in his attempt. The emergency compelled him to abandon the wheel and go to the forward part of the vessel. Whatever was done in this crisis, whether wise or otherwise, is not to be charged as a fault upon the captain. It is the fault of those who forced the emergency upon him. To the same effect is the evidence of the pilot of the schooner, McNamee.

The collision was occasioned by the fault of the steamer, and she should be condemned therefor. The decree of the district court was right, and should be affirmed, with costs.

[NOTE. On appeal by the claimants, the judgment of the circuit court in this case was affirmed by the supreme court, on the ground that it was the imperative duty of the steamer to keep out of the way of the schooner: and, although there was no special finding that the steamer saw the schooner, it would have been a gross fault on her part if she did not. In delivering the opinion of the court, Mr. Chief Justice Waite, remarked that, "as the responsibility of avoiding the collision was on the steamer, it was a fault in her to get so close that a slight change in the course of the schooner, in the midst of what seemed to be imminent peril, would bring the vessels together. It is clear that those on board the steamer were deceived as to the movements of the schooner by the leeway they themselves were making, and that they expected to pass to the windward, when they should have shaped their course to go to the leeward." The Benefactor, 102 U. S. 214.]