## Case No. 3,035.

### The COLUMBIA.

[9 Ben. 254.][1]

District Court, E. D. New York. Nov., 1877.

DAMAGES—LOSS OF A SEINE—CHANGE OF COURSE IN EXTREMIS—LOOKOUT.

1. Where an excursion steamer, coming from Rockaway to New York, overtook off Coney Island a schooner on her return from a catch of menhaden and towing behind her two boats holding her seine, and the steamer struck one of the boats and carried off the seine, which was lost: *Held*, that the steamer was liable for the damages.

2. The change of course made by the sloop to avoid the steamer was in extremis and not a fault.

[Cited in The Aurania and The Republic, 29 Fed. 125; The Britannia, 34 Fed. 559.]

3. Where a large and swift steamer without sufficient cause attempts to pass dangerously near to a sailing vessel, one of the risks the steamboat takes is that the man at the helm of the sailing vessel shall not lose his presence of mind, or form a different estimate from that of the steamboat pilot, as to the danger of collision.

4. Such a steamboat is in fault for undertaking to pass a sailing vessel in a channel so narrow that in order to pass she must come within 15 feet of the sailing vessel, when by stopping a short time she could have passed in a wider channel.

[Cited in The City of Springfield, 29 Fed. 926; The Raritan, 32 Fed. 848.]

5. The necessity of a stationed lookout in the daytime considered.

In admiralty. The steamboat Columbia, running between New York and Rockaway Beach, and then on an excursion having about 1,500 sewing-girls from New York City on board, overtook the schooner Ella Robbins, which was coming in to Barren Island with a catch of menhaden for the fish-oil factory there, and having her seine in two boats towing astern. As the steamboat came up astern of the sloop without slackening speed, the master of the sloop, who at first held his course, fearing to be struck, luffed twice; and the effect was to bring the boats astern of the schooner diagonally across the track of the steamboat. One of the boats was struck and broken up, the seine torn to pieces and carried off, and the steamboat went on, having cleared the stern of the schooner by about thirty feet. This action was brought to recover damages for the loss of the seine. Upon the reference ordered, evidence was taken to show the probable amount of menhaden the schooner would have caught in the three days' delay that was necessary to get another seine and boat, it being just at the height of the fishing season. Exceptions were taken to the report of the commissioner, allowing the seamen who libelled for their share one-sixth of the catch so estimated, and overruled.

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

Beebe, Wilcox & Hobbs, for libellants.
D. & T. McMahon, for claimant.

BENEDICT, District Judge. This is an action to recover of the steamboat Columbia the damage caused by the running over by that steamboat of some boats attached to the stern of the sloop Ella Robbins.

The place of the accident was off Coney Island. The Columbia is a large passenger steamboat engaged in regular trips between New York and Rockaway beach, and was at the time of her collision on her way to New York. The Ella Robbins is a fishing sloop that was returning from fishing at Rockaway shoals, having in tow her fishing boats with the net in them. The "purse" boat was next to the sloop, and the "mate" boat astern. The net was partly in one boat and partly in the other. The distance from the stern of the sloop to the stern of the mate boat as they were towing was about fifty feet. The steamboat and sloop were bound in the same direction, the sloop being ahead sailing close hauled at a speed of some five miles an hour, with the wind north-west. The ordinary speed of the Columbia is some eighteen or twenty miles an hour. When under one bell she goes about ten miles an hour with wind and tide such as it was on this occasion. The weather was fair and there were no other vessels near enough to obstruct the navigation of the steamboat or the sloop.

While the Columbia was passing along by Coney Island on a west course she came up with the sloop ahead, and in passing her ran over the fishing boats attached to the sloop's stern, destroying one, injuring the other, and carrying off the net upon her bow, which is the injury here complained of.

The theory of the defence is that where the Columbia overtook the sloop the water is shoal for such a steamboat and she was for that reason running under one bell. That moreover she was in a sort of channel or gut not over 125 feet wide, in which it was necessary for her safety that she should keep, to enable her to pass in safety an obstruction in the channel caused by a wreck, sunk where the room on either side of the obstruction was not over 200 feet, and which she was approaching. That she intended to pass to southward of the obstruction and to southward of the sloop, and would have done so in safety had the sloop held her course; but the sloop, instead of holding her course, first luffed, then bore away, then luffed again and finally bore away a second time just under the bows of the Columbia, thereby drawing her boats directly ahead of the Columbia and so causing their destruction. The statement of those on the sloop is that they held their course without any variation whatever, and that the Columbia came up directly astern until close upon them, when she passed to the northward of

them at a short distance, and in sheering to pass ran over the boats.

The evidence discloses many contradictions. Five witnesses from the sloop testify that no change of the course of that vessel occurred, while two witnesses from the steamboat are equally positive that the sloop changed her course as averred in the answer. As to the change of course by luffing, the pilot of the steamboat exaggerates into a change of course what is described by a passenger on the Columbia, called in her behalf, as no more than keeping up close to the wind, not amounting to a change of course and not calculated to mislead the steamboat or in any way to embarrass her in her movements.

As to the bearing away, several from the sloop say that the sloop went off some three points when the Columbia caught the boats fastened to her stern. Upon this point, therefore, the only difference between the witnesses is as to when it occurred. Those from the Columbia say it was before she came up to the sloop, and caused the collision. Those from the sloop say it was after the boats had struck, and was caused by the collision. I incline to the opinion that the sloop was allowed to fall off before the boats struck. The conceded fact that the stern of the Columbia passed between the purse boat and the mate boat, tends strongly to confirm this conclusion, and the fact is more consistent with the probabilities. But I do not agree with the conclusion drawn by the claimant that if the sloop fell off, she alone is responsible for the collision, for the reason that this movement of the sloop was caused by the too near approach of the steamer. The passenger called in behalf of the steamer says that the course taken by the Columbia would not have carried her more then ten or fifteen feet from the sloop to port. Under such circumstances it would not be very surprising if those on the sloop, seeing a steamer of the size of the Columbia approaching so near, and coming almost directly for them, should, at the last moment, attempt some movement to get out of her way. When such a steamer, without sufficient cause, attempts to pass dangerously near to a sailing vessel, one of the risks the steamboat takes is that the man at the wheel of the sailing vessel shall not lose his presence of mind, or form a different estimate from that of the steamboat pilot as to the danger of collision. This sloop, therefore, cannot be held to be in fault for keeping away at the moment of collision, although the result shows that if she had not done so the steamboat would have just cleared her. The fault that caused the collision was that of the pilot of the steamboat in attempting to pass so close to the sloop.

An effort has been made to show that it was impossible for the steamboat with safety to herself and her large cargo of passengers to give the sloop a wider berth at the particular place where the steamboat came up to her. I must confess that I am not entirely satisfied that the experienced pilot of the Columbia does not exaggerate the narrowness of the channel as he does the luffs of the sloop. But if it be true that at the place where this sloop was when the Columbia approached her there was no room for him to pass at a greater distance than ten or fifteen feet, then it was the duty of the steamboat to stop and allow the sloop to reach a place where there was more room, before attempting to pass her. That the Columbia could have stopped a little sooner than she says she did is not to be denied, and as the narrow place her pilot speaks of is not claimed to have extended any considerable distance, a safe passage would have been secured with but little delay. Upon her own showing, therefore, the Columbia is in fault for attempting to pass the sailing vessel as she did.

I add a word upon the subject of lookout, although unnecessary for the determination of this case, because it is clear that this collision was not caused by the absence of a lookout upon the bow of the steamboat.

The propriety of having a lookout in the daytime under some circumstances has been adverted to in several adjudged cases. In the case of The Young America [Case No. 18,179], the collision occurred about noon. The court says, "There was no lookout on duty and the master was acting as wheelsman. These are positive faults." In the case of The Marcia Tribon [Case No. 9,062], the collision occurred about noon, and Judge Sprague says, "If a proper lookout had been kept, which is always requisite in going out of a harbor where other vessels are generally lying at anchor, the collision ought to have been avoided." In the case of The A. G. Brooks [Id. 98], the collision occurred about 4 o'clock p. m., and Judge Lowell says, "the very fact of want of a lookout is evidence against the brig until it is shown that no harm came from the neglect."

It cannot therefore be claimed that a stationed lookout can be dispensed with in the daytime under all circumstances.

In the present case—in which, by the way, the sworn answer avers that the Columbia had a lookout stationed—I do not say that the having of such a lookout on the Columbia was so necessary a precaution that the failure to have a lookout renders her liable, for it is entirely clear that good judgment and caution in the pilot-house would have prevented the occurrence of this collision without aid from a lookout forward; and, as before stated, I hold the Columbia liable because of the error of her pilot in running unnecessarily close to the sloop.

But the case has forcibly reminded me of the remark made by Judge Betts—that most experienced man in cases of this description —in determining a collision case, that one

of the advantages of having a stationed lookout was, that a lookout properly stationed, who is in no way responsible for any action taken in the pilot-house, is likely to be not only able but willing to testify to everything that may occur in connection with the accident. The remark is illustrated by this case. The Columbia had no stationed lookout, but the necessity of having some one forward who saw the accident and could testify intelligently as to what occurred was felt as soon as this action was brought; and by good fortune a person was found of maritime experience who happened to be forward, and who was watching the courses of the two vessels. The testimony of this volunteer lookout, although not sufficient to exonerate the Columbia, has furnished controlling evidence as to the facts, and caused the case to turn rather upon a question of law than of fact. If the owners of steam vessels were in all cases able to furnish such a witness so stationed, mistakes in deciding as to the facts would rarely occur.

Let a decree be entered in favor of the libellant, with an order of reference to ascertain the amount.