THE RARITAN.

THE WILLIE.

THE RAMBLER.

THE THOMAS P. BALL.

BERWIND COAL CO. *v.* THE RARITAN and others.

*(District Court, S. D. New York.* November 19, 1887.)

COLLISION—TWO TOWS—NARROW CHANNEL—UNJUSTIFIABLE APPROACH.

The tug R., towing the schooner B., met, in the Arthur Kills, a long tow in charge of two other tugs. The wheelsman of the schooner, who was the only man on deck, could not well see forward, his view being obstructed. The R. passed very near libelant's boat, though the evidence showed that there was from 150 to 300 feet of available water to leeward, and the schooner struck libelant's boat, which was on the port side of the tail of the tow. *Held,* that the schooner was in fault in going through a narrow passage with no lookout and the wheelman's view obstructed; that the tug R. was in fault in passing unjustifiably near the other tow, and for not taking measures to counteract a sheer made by the schooner.

*Wilcox, Adams & Macklin,* for libelants, Berwind Coal Co.
*E. D. McCarty,* for the Rambler.
*H. G. Ward,* for the Willie and the Raritan.
*Owen & Gray,* for the Thomas P. Ball.

BROWN, J. The collision in this case I find was about a half a mile or a little over beyond Smoking Point in the Arthur Kills, and to the westward of Story's Flats. The evidence indicates that the channel way of available water for all the vessels, viz., a depth of 8 or 10 feet, was at least 500 or 600 feet wide, and the chart would indicate an even greater width. I must find that this gave abundant room for the Rambler with the schooner in her tow on a hawser to have gone safely on either side of the long tow of the Raritan and Willie, had the proper signal been first given to indicate on which side the two would pass each other. No signals, however, were given by either; and the Rambler took the ordinary course to the right. The Willie and the Raritan thereupon ported, and hauled somewhat to the westward. Though the channel, like the shore, was somewhat curvilinear, and the west wind caused the tail of the tow to sag to the eastward, and a little across the channel, the evidence shows that there was undoubtedly from 150 to 300 feet of available water to the eastward of the libelant's boat, which was on the port or leeward side of the tail of the tow, and that the Rambler with the schooner ought to have passed clear of her without difficulty.

The weight of evidence is certainly that there was a decided sheer of the schooner to port, at least from the time she was abreast of the middle of the tow, and I cannot doubt that this was the immediate cause of

the collision. There was no lookout on the schooner, and only the wheelsman was on deck. His view was much obstructed; he was able to see only the flag-staff and the smoke-stack of the tug. Under such circumstances, he could not be expected to steer accurately, or to know whether he was in strict line with the tow or not. The master was below, and did not get on deck until the collision was inevitable. I cannot acquit the schooner of negligence in this regard, while she was going through a narrow passage abreast of the Shady Flats.

A more difficult question relates to the liability of the tug Rambler. As respects her, I think the weight of evidence is that she went unjustifiably near the libelant's boat; not more than 12 feet from it. The witnesses on the libelant's boat so testify, and the pilot of one of the tugs is very positive that she was so near that, as he looked back, it seemed to him that she actually rubbed against the libelant's boat, and passed under her stern as she went by her. This was probably only the effect of perspective in looking against the curved line of the long tow. But considering the fact that a schooner of the size of the Ball upon a hawser of 30 or 40 fathoms is liable to sheer somewhat, even with the best handling, I think the Rambler must be held partly responsible for the accident, both for passing unreasonably and unjustifiably near to the tail of the tow when there was so much more space available to leeward, and also for not sooner observing the sheer of the schooner, and making timely endeavors to counteract it. It has been repeatedly held that steamers are bound to allow a fair margin for the contingencies of navigation when they are able to do so, and liable as for negligence when they do not do so, and accidents have in consequence ensued. *The Virginia Ehrman*, 97 U. S. 309, 316; *The Benefactor*, 14 Blatchf. 254; *The Columbia*, 9 Ben. 254; *The Laura* v. *Rose*, 28 Fed. Rep. 104; *The Fort Lee*, 31 Fed. Rep. 570. This principle is, I think, applicable to the present case.

No fault seems proved against the Willie and the Raritan. I should have held them liable for not sending a helper to the aid of the tow, had it not appeared that, notwithstanding the sagging, there was still left a reasonably sufficient space for passing. The libelant is entitled to a decree against the other two vessels; as to the Willie and Raritan, the libel is dismissed, with costs.