[Civ. No. 29658. First Dist., Div. Two. June 19, 1972.]

STANDARD OIL COMPANY OF CALIFORNIA,
Cross-complainant and Appellant, v.
INTREPID, INC., Cross-defendant and Respondent.

## Counsel

Pillsbury, Madison & Sutro, Stanley J. Madden, Noble K. Gregory, W. Robert Buxton and Walter R. Allan for Cross-complainant and Appellant.

Berry, Davis & McInerney, Phillip S. Berry and Siegfried Hesse for Cross-defendant and Respondent.

## Opinion

**KANE, J.**—Cross-complainant Standard Oil Company of California (Standard) appeals from a judgment entered on a jury verdict denying recovery on its indemnity cross-complaint.

### The Basic Case

The relevant facts disclose that respondent (Intrepid), a ship repair company, contracted with Standard, a shipowner, through its wholly owned

subsidiary, Chevron Shipping Company (Chevron), to perform alteration and remodeling work aboard Standard's vessels berthed at the Richmond Wharf. Under the terms of the contract Intrepid was required to furnish the necessary tools and equipment and to load same aboard ship. Ordinarily, Intrepid's employees carried the equipment aboard. However, in the loading of heavy equipment, they requested the assistance of other employees, including those of Chevron.

On February 2, 1968 three of Intrepid's employees, Michael Hansen, Norman Johnsen and Leroy McArthur, were assigned to work on the *S.S. Idaho Standard (Idaho)*. Since their equipment consisted of hand tools, a mortar box, a hoe and three and a half sacks of mortar which proved to be too heavy to carry by hand, they enlisted the help of Harold Brock, a forklift operator, to load their equipment aboard the *Idaho*. Hansen and McArthur placed the equipment in the metal basket of the forklift. They then boarded the ship to unload the basket when it arrived alongside the vessel. Brock hoisted the loaded basket to a position where the bottom of the basket was even with the poop deck. The poop deck had two railings which could not be removed. Hansen testified that he and McArthur proceeded to unload the basket by sliding the equipment between the lower rail and the deck. The tools were unloaded first, then McArthur passed the half sack of mortar to Hansen. The accident which took McArthur's life occurred seconds thereafter.

As to how the accident happened, the evidence is conflicting mainly due to the fact that nobody witnessed the actual events. According to Standard's theory, which finds support in the record, in attempting to unload the remaining sacks of mortar, McArthur climbed and stepped over the railing into the basket and caused it to become unbalanced and to fall. The falling basket, according to this theory, knocked him unconscious and into the water where he drowned. According to Intrepid's version, McArthur did not get into the basket. Intrepid theorizes that the basket became unbalanced as McArthur reached through the railings for one of the remaining bags of cement and the quick-turning side of the basket caught and pulled him down.

The evidence, however, is clear and unequivocal that the basket of the forklift was unsafe and defective; and there is ample evidence in the record to support a conclusion that Intrepid was itself negligent. Thus, there is proof that Intrepid failed to give instructions to its employees about the safety precautions to be observed during the loading and unloading of the equipment. Intrepid also knew that, pursuant to Standard's rule, no one was permitted to be in the basket when it was raised aloft, and that although

some employees were warned not to get into the basket Intrepid failed to pass on the warning to McArthur or to caution him in any other way with respect to the use of the basket. It is also admitted that Intrepid did not inspect the supply baskets in order to ascertain their safety for carrying men aloft.

Based upon these facts, plaintiffs, McArthur's heirs, brought a wrongful death action against Standard alleging both negligence and unseaworthiness. Standard cross-complained against Intrepid claiming indemnification in case it were found liable in the original action. The jury returned a verdict in favor of plaintiffs in the main action. In response to interrogatories the jury found that Standard was negligent, that the ship was unseaworthy, and that McArthur was not guilty of contributory negligence. The jury also returned a verdict against Standard in the indemnity action on its cross-complaint.

In determining the liability of the parties in the indemnity action, the court, inter alia, gave the following instruction to the jury: "Further, in connection with Standard's action for indemnity, you are instructed that Standard cannot recover (1) if its own fault or negligence proximately and primarily contributed to the injury or (2) if it, Standard, had knowledge of, acquiesced to, and participated in the negligent acts, or (3) failed to perform some duty in connection with the omission which it may have undertaken by virtue of its agreement, or (4) if Standard's negligence was active or affirmative as distinguished from the negligence that is passive, or (5) if Standard prevented or serious [*sic*] handicapped Intrepid in doing a workmanlike job."

Standard contends that by giving the above instruction and refusing its instructions on the subject[1] the court committed prejudicial error because the indemnity action in question is governed by the federal maritime law under which, contrary to the state law, a shipowner is entitled to indemnification unless its own negligence or the unseaworthiness of its vessel prevented or seriously handicapped the ship service company in fulfilling its

---

[1]*"Defendant's Proposed Instruction No. B-12*
"The conduct of the shipowner is not sufficient to preclude recovery of indemnity unless at the least it prevented or seriously handicapped the ship repair company in its ability to do a workmanlike job."
*"Defendant's Proposed Instruction No. A-8*
"The fact that you may have found in the first lawsuit herein that defendant was negligent or that the vessel was unseaworthy, or both, does not excuse Intrepid from carrying out its obligation to perform its work in a workmanlike manner and with reasonable safety unless you also now find that such negligence or unseaworthiness actually prevented or seriously hindered Intrepid in performing the work in a manner and by a method which was reasonably safe."

implied warranty of workmanlike performance. Appellant's position is well taken.

### Duty of Workmanlike Performance

In *Ryan Co.* v. *Pan-Atlantic Corp.* (1956) 350 U.S. 124 [100 L.Ed. 133, 76 S.Ct. 232], the landmark decision in this area, it was established that a stevedoring contractor who enters into a service agreement with the shipowner is liable to indemnify the owner for damages resulting from the contractor's substandard performance. Under this rule which has later been extended also to ship repair contracts (*United New York Sandy Hook Pilots Ass'n* v. *Rodermond Indus.* (3d Cir. 1968) 394 F.2d 65, 71; *Booth Steamship Co.* v. *Meier & Oelhaf Co.* (2d Cir. 1958) 262 F.2d 310, 312), competency and safety are inescapable elements of the service undertaken. The stevedore's warranty of workmanlike service is comparable to a manufacturer's warranty of the soundness of its manufactured product, a warranty to cover defects not attributable to the manufacturer's negligence (*Ryan Co.* v. *Pan-Atlantic Corp., supra,* at pp. 133-134 [100 L.Ed. at pp. 141-142]; *Italia Soc.* v. *Ore. Stevedoring Co.* (1964) 376 U.S. 315, 319 [11 L.Ed.2d 732, 737, 84 S.Ct. 748]). Although the *Ryan* court itself was careful to emphasize that the shipowner's suit for indemnification was not changed "from one for a breach of contract to one for a tort simply because recovery may turn upon the standard of the performance . . . ." (*Ryan Co.* v. *Pan-Atlantic Corp., supra,* at p. 134 [100 L.Ed. at p. 142]), later cases made it even clearer that the shipowner's claim is not for contribution from a joint tortfeasor, but rather is a claim for indemnity rooted in contract, by which the contractor warrants by implication to the shipowner that it will perform its services in a workmanlike manner, with reasonable safety to persons and property (*United New York Sandy Hook Pilots Ass'n* v. *Rodermond Indus., supra,* at p. 71).

The preceding principles establish that the duty of workmanlike performance is, in effect, a form of strict liability which is imposed upon the contractor by law in case he breaches the implied term of the contract. It follows that the contractor is liable if he fails to perform safely, even if his conduct was not negligent at all (*Italia Soc.* v. *Ore. Stevedoring Co., supra,* at p. 319 [11 L.Ed.2d at p. 737]). Furthermore, the shipowner's negligence or the unseaworthiness of its ship are not necessarily fatal to its claim for indemnity (*Italia Soc.* v. *Ore. Stevedoring Co., supra,* at p. 320 [11 L.Ed.2d at p. 738]; see also *American Export Lines, Inc.* v. *Revel* (4th Cir. 1959) 266 F.2d 82, 87; *Southern Stevedoring & Contract Co.* v. *Hellenic Lines, Ltd.* (5th Cir. 1968) 388 F.2d 267, 271). Under what is now well established federal maritime law, the shipowner is precluded

from recovery in an indemnity action *only if its conduct prevented or seriously handicapped the contractor in performing a workmanlike job* (*Marincovich* v. *Oriana, Inc.* (1970) 13 Cal.App.3d 146, 159 [91 Cal. Rptr. 417]; *Rederi A/B Nordstjernan* v. *Crescent Wharf & Warehouse Co.* (9th Cir. 1967) 372 F.2d 674, 676).

### Applicability of Federal Maritime Law

The facts of the instant case reveal that by an agreement with Chevron, Intrepid undertook to perform alteration and remodeling work on Standard's vessels. This agreement, although concluded with Chevron, was clearly for the benefit of Standard's ships and Standard itself as a shipowner (*Crumady* v. *The J. H. Fisser* (1959) 358 U.S. 423, 428 [3 L.Ed.2d 413, 417, 79 S.Ct. 445]). The services promised and the work done on the *Idaho* were clearly maritime in nature and consequently federal maritime law applies (*United New York Sandy Hook Pilots Ass'n* v. *Rodermond Indus., supra,* at p. 70; *Feliciano* v. *Compania Trasatlantica Espanola, S.A.* (1st Cir. 1969) 411 F.2d 976). As the court pointed out in *Booth Steamship Co.* v. *Meier & Oelhaf Co., supra,* it has been long established that contracts for repair of vessels are maritime contracts which are governed by the federal maritime law (at pp. 312-313)—the underlying rationale being to achieve uniformity, i.e., since a ship visits many ports, the shipowner's indemnity right should remain constant.

While Intrepid admits that the above rule is applicable to a "normal" indemnity action, it contends that in the present situation a different rule should be applied. It insists that since Standard is subjected to liability solely for the negligent acts of Chevron, the contest over indemnity is, in reality, between Chevron and Intrepid, two shore-based entities, and that therefore state law is applicable. We disagree.

First, we observe that Standard was found liable for both unseaworthiness and negligence. It is beyond question that as to unseaworthiness Standard's liability was independent and not vicarious. The law is too well settled to merit discussion that a shipowner's duty to supply a seaworthy vessel is an absolute and non-delegable one; and the shipowner becomes liable even if the unseaworthiness was brought about by the contractor (*Italia Soc.* v. *Ore. Stevedoring Co., supra,* at p. 323 [11 L.Ed.2d at p. 740]; *Crumady* v. *The J. H. Fisser, supra,* at p. 427).

As to negligence, Standard's liability was incurred through the application of *respondeat superior* and the stipulation by which Standard assumed liability for all the activities of Chevron. This fact, however, in no

way necessitates the abdication of the federal maritime law. The discussion, *supra,* makes it abundantly clear that even if the negligence had been committed by Standard itself, such would not *necessarily* constitute a bar to its recovery in the indemnity action. It follows *a fortiori* that negligence imputed to it by reason of *respondeat superior* is not necessarily a bar either.

### Prejudicial Nature of Error

Examining the instruction complained of in the light of the applicable federal maritime law, as we must, it becomes readily manifest that the instruction given was clearly erroneous. As we have pointed out, Standard's negligence does not necessarily bar its right to indemnity (alternative (1) of the instruction) nor does its notice of acquiescence or participation in the negligent acts of Chevron (alternative (2) of the instruction). Similarly, a failure to perform some contractual duty (alternative (3) of the instruction) does not constitute a bar (*American Export Lines, Inc.* v. *Revel, supra*). It is also settled that recovery in an indemnity action is not necessarily affected or defeated by the shipowner's negligence, whether active or passive (alternative (4) of the instruction), primary or secondary (*Weyerhaeuser S.S. Co.* v. *Nacirema Co.* (1958) 355 U.S. 563, 569 [2 L.Ed.2d 491, 495, 78 S.Ct. 438]; *Italia Soc.* v. *Ore. Stevedoring Co., supra,* at p. 321 [11 L.Ed.2d at pp. 738-739]; *Marincovich* v. *Oriana, Inc., supra,* at p. 161).

While the instruction included the federal rule as alternative (5), it also permitted the jury to defeat recovery by application of state law. It is, of course, impossible to determine which law the jury applied; but since it is conceivable that the erroneous state law was utilized, the prejudicial effect is obvious.

We must also reject Intrepid's contention that it cannot be found liable in view of the jury's finding that McArthur was not guilty of contributory negligence. Such an assertion would be valid if Intrepid's only potential liability were vicarious, i.e., dependent upon that of McArthur.

But as we have pointed out, there is abundant evidence in the record to establish liability upon Intrepid, separate and apart from McArthur's conduct.

Finally, we conclude that the instructions submitted by Standard (see fn. 1, *supra*) should have been given. It is axiomatic, of course, that in determining whether the evidence supports a requested instruction, the appellate court must view the evidence in favor of the party requesting the instruction (*Menefee* v. *Williams* (1968) 259 Cal.App.2d 56, 64 [66

Cal.Rptr. 108]; see also *Selinsky* v. *Olsen* (1951) 38 Cal.2d 102, 103 [237 P.2d 645]; *Bonebrake* v. *McCormick* (1950) 35 Cal.2d 16, 19 [215 P.2d 728]). Viewing the evidence in the light of this rule, we are satisfied that the jury, under such proper instructions, could have found (1) that Intrepid breached its warranty of workmanlike performance, and (2) that the fault of Standard—either by reason of negligence or unseaworthiness—did not prevent or seriously handicap Intrepid in doing a workmanlike job.

It follows, therefore, that Standard is entitled to a determination of its claim for indemnity under the exclusively applicable federal rules.

The judgment is reversed.

Taylor, P. J., concurred.

A petition for a rehearing was denied July 19, 1972, and respondent's petition for a hearing by the Supreme Court was denied August 16, 1972.