[Civ. No. 31084. Fourth Dist., Div. One. Dec. 20, 1984.]

TONY D'AQUISTO et al., Plaintiffs and Appellants, v. CAMPBELL INDUSTRIES, Defendant and Respondent.

**COUNSEL**

Nicholas De Pento and Dennis J. Lyden for Plaintiffs and Appellants.

Daniel B. MacLeod, C. Douglas Alford and Alford & MacLeod for Defendant and Respondent.

## OPINION

**STANIFORTH, J.**—Plaintiffs Tony D'Aquisto, et al., are commercial fishermen on the motor vessel *Christina C.* Their action sought recovery from Campbell Industries for negligent repair of the vessel which resulted in lost fishing time and thus the fishermen's lost share of the catch. The trial court granted summary judgment in favor of Campbell. The fishermen appeal.

On November 26, 1979, the owners of the *Christina C* entered into a written contract with Campbell for repair work. The agreement provided, in pertinent part: "It is further agreed by the parties hereto that the contractor will not be liable for (1) any incidental, special or consequential damages of any nature whatsoever and/or (2) any delay or loss of use of the vessel, including, without limitation, lost revenues or lost profits.

". . . . . . . . . . . . . . . . . . . . . . . . .

"It is agreed that no claim arising from this transaction, including but not limited to contractual claims for breach of contract and tort claims based upon alleged negligent repair or on theories of strict liability or otherwise, shall be valid as against contractor unless said claim is presented in writing to contractor within sixty (60) days of and suit thereon commenced within six (6) months of the date of redelivery of the vessel to owner."

The vessel was drydocked at Campbell's shipyard on December 10, 1979. On December 20, 1979, the owners requested additional work on the propulsive shafts which connect the engine to the propellers. The vessel was scheduled to depart on its first voyage of the 1980 fishing season on January 10, 1980.

On January 16, Campbell's repair work finished, the vessel was undocked. Campbell then had a diver inspect the tail shaft bearings of the vessel because of a problem discovered on a sister ship. A potential problem was found, the vessel again drydocked and the stern tube bearings which support the propulsive shafts were replaced pursuant to the warranty provisions of the contract. The repair work was not completed until February 24, 1980.

On June 13, 1980, the fishermen filed a complaint against Campbell, alleging Campbell negligently repaired the vessel and they lost wages as a result of the negligence.

On July 11, 1980, the owners of the vessel sued Campbell, alleging negligent repairs, breach of contract and breach of warranty. (Super.Ct. No.

455376.)[1] Campbell cross-complained for payment on the repairs it had made. The trial judge, Paul Eugene Overton, ruled an exculpatory clause in the contract between the owners and Campbell was valid and enforceable. The jury found Campbell had breached the contract and warranty and was negligent, however, they awarded only nominal damages ($1) to the owners on each cause of action. Judge Overton, based on a poll of the jurors taken before their discharge, held as to the negligence cause of action "the jurors did not follow the law; and, the verdict was contrary to the court's instructions" and concluded the owners were to take nothing on the negligence cause of action. This case is currently pending on appeal (D000956).

On April 24, 1983, Campbell's motion for summary judgment against the fishermen was granted by Judge Levitt. He ruled admiralty law applied and under admiralty law, the fishermen failed to state a cause of action because "a seaman may not maintain a negligence action for damages of a vessel which arises from his employment."

## I

■ The aim of the summary judgment procedure is to discover, through submission of affidavits, whether the parties possess evidence requiring the fact-weighing procedures of a trial. (*Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal.3d 842, 851 [94 Cal.Rptr. 785, 484 P.2d 953].) ■ In examining the sufficiency of affidavits, affidavits of the moving party are strictly construed while those of the opposing party are liberally construed, and doubts as to the propriety of summary judgment are resolved in favor of the party opposing the motion. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].) The reviewing court must determine upon a de novo examination of the affidavits whether there was no genuine issue of material fact and the moving party was entitled to judgment as a matter of law. (*M/V American Queen* v. *San Diego Marine Const.* (9th Cir. 1983) 708 F.2d 1483, 1487; *Lichty* v. *Sickels* (1983) 149 Cal.App.3d 696, 699 [197 Cal.Rptr. 137].)

## II

■ State courts have concurrent jurisdiction with federal courts to entertain actions governed by admiralty law. (*Madruga* v. *Superior Court* (1954) 346 U.S. 556, 560-561 [98 L.Ed. 290, 74 S.Ct. 298]; *Baptiste* v. *Superior Court* (1980) 106 Cal.App.3d 87, 94 [164 Cal.Rptr. 789], cert.

---

[1]As requested by the parties, we take judicial notice of this case pursuant to Evidence Code section 459.

den. *Chevron Shipping Co. (Standard Oil Co.)* v. *Baptiste* (1981) 449 U.S. 1124 [67 L.Ed.2d 110, 101 S.Ct. 940].) If a federal maritime rule of law, whether statutory or judicial, exists that is applicable to the issue rising in a maritime action, admiralty law must be applied whether the action is litigated in state or federal court. (*Garrett* v. *Moore-McCormack Co.* (1942) 317 U.S. 239, 245 [87 L.Ed. 239, 63 S.Ct. 246].) ■ State law may not be applied "if it works material prejudice to the characteristic features of the general maritime law or interferes with the proper harmony and uniformity of that law in its international and interstate relations." (*Fahey* v. *Gledhill* (1983) 33 Cal.3d 884, 887 [191 Cal.Rptr. 639, 663 P.2d 197].)

■ There is a long history of admiralty courts regulating the liability of boat repair and service contractors. (*Italia Societa v. Oregon Stevedoring Company* (1964) 376 U.S. 315, 318 et seq. [11 L.Ed.2d 732, 84 S.Ct. 748]; *Ryan Stevedor. Co.* v. *Pan-Atlantic Steam. Corp.* (1956) 350 U.S. 124, 132 et seq. [100 L.Ed. 133, 76 S.Ct. 232]; *Hall-Scott Motor Car Co.* v. *Universal Ins. Co.* (9th Cir. 1941) 122 F.2d 531, cert. den. *Universal Ins. Co.* v. *Hall-Scott Motor Car Co.* (1941) 314 U.S. 690 [86 L.Ed. 552, 62 S.Ct. 360]; *Fahey* v. *Gledhill, supra,* 33 Cal.3d 884, 888-889; *Standard Oil Co.* v. *Intrepid, Inc.* (1972) 26 Cal.App.3d 135, 139 [102 Cal.Rptr. 604].) Similarly, there is a long history of admiralty courts regulating disputes over mariner's wages (*Oliver* v. *Alexander* (1832) 31 U.S. (6 Pet.) 143 [8 L.Ed. 349]; *U. S. Bulk Carriers, Inc.* v. *Arguelles* (1971) 400 U.S. 351 [27 L.Ed.2d 456, 91 S.Ct. 409]; *Putnam* v. *Lower* (9th Cir. 1956) 236 F.2d 561, 569; see also 1 Benedict on Admiralty, §§ 212-213; 70 Am.Jur.2d, Shipping, § 207 et seq., pp. 417-424) and governing recovery for lost wages and profits due to negligently caused injury to the vessel (*Robins Dry Dock & Repair Co.* v. *Flint* (1927) 275 U.S. 303 [72 L.Ed. 290, 48 S.Ct. 134]; *The Hygrade No. 24* v. *The Dynamic* (2d Cir. 1956) 233 F.2d 444; *Carbone* v. *Ursich* (9th Cir. 1953) 209 F.2d 178; *Guarrasi* v. *Panama Canal Company* (D. Canal Zone 1967) 271 F.Supp. 678; *Taber* v. *Jenny* (D.Mass. 1856) 23 Fed. Cas. 605 (No. 13, 720); *Rodrigues* v. *Campbell Industries* (1978) 87 Cal.App.3d 494 [151 Cal.Rptr. 90]).

Thus, we conclude this case is governed by admiralty law.

### III

■ This court has accepted the view of the Ninth Circuit as expressed in *Carbone* v. *Ursich, supra,* 209 F.2d 178, that a fisherman may recover from a third party tortfeasor for the economic loss of the share of the catch. (*Rodrigues* v. *Campbell Industries, supra,* 87 Cal.App.3d 494, 499-500.)

In *Carbone,* the Ninth Circuit allowed the fishermen to recover for their lost share of the catch suffered when another boat negligently fouled their

fishing net and thus put their boat out of commission until the repairs to the net were completed. We pointed out in *Rodrigues* that *Carbone* distinguished the action by seamen from that of a ship charter dealt with in *Robins Dry Dock & Repair Co.* v. *Flint, supra,* 275 U.S. 303, saying: " 'It is quite evident that the court, although dealing with a well established rule of law of torts, was not thinking of the special situation of the fishermen who, as we have here indicated, had long been recognized as beneficiaries under a special rule which made the wrongdoer liable not only for the damage done to the fishing vessel, but liable for the losses of the fishermen as well. This long recognized rule is no doubt a manifestation of the familiar principle that seamen are the favorites of the admiralty and their economic interests entitled to the fullest possible legal protection. These considerations have given rise to a special right comparable to that of a master to sue for the loss of services of his servant, or the right of a husband or father to sue for the loss of services of wife or child.' (*Carbone* v. *Ursich, supra,* 209 F.2d 178, 182.)" (*Rodrigues* v. *Campbell Industries, supra,* 87 Cal.App.3d 494, 500.)

In *Rodrigues* v. *Campbell Industries, supra,* 87 Cal.App.3d 494, we used the reasoning of *Carbone* to allow fishermen to seek recovery against Campbell Industries for their lost share of the catch due to Campbell's allegedly defective manufacture of a fishing vessel which caused them to lose fishing time. Since the defective repair of a vessel is akin to the defective manufacture of a vessel, we conclude that the reasoning of *Rodrigues* applies equally to this case. The fishermen state a cause of action for their lost share of the catch due to Campbell's allegedly negligent repairs.[2]

## IV

■ Campbell asserts, as a matter of law, the fishermen are barred from recovery because a clause in the repair contract between them and the owners protects Campbell from liability for negligence causing lost profits and therefore from the fishermen's cause of action for their lost share of the catch. Even assuming the fishermen are bound by this agreement, we are not persuaded the agreement bars recovery based on negligent repairs.

Admiralty law governs the validity and interpretation of exculpatory clauses in ship repair contracts. (*Fahey* v. *Gledhill, supra,* 33 Cal.3d 884, 889.) Exculpatory clauses in ship repair contracts have not been uniformly invalidated under admiralty law. (*Id.,* at p. 893.) As the California Supreme

---

[2]See also *Miller Industries* v. *Caterpillar Tractor Co.* (11th Cir. 1984) 733 F.2d 813, 820; *Jones* v. *Bender Welding & Mach. Works, Inc.* (9th Cir. 1978) 581 F.2d 1331, 1337: "In admiralty it is well settled that fishing vessel owners and commercial fishermen may recover for lost fishing profits under the general maritime law of negligence."

Court explained: "The rationale for permitting a party to disclaim responsibility for his own negligence is that parties to an agreement having substantially equal bargaining power may bargain over which is to bear the risk of loss and set the price accordingly, thus achieving a more rational distribution of the risk than the law would otherwise allow. 'The rationale presupposes that the contracting parties have in fact considered the relative costs of insuring against negligent design and manufacture and have incorporated their conclusions into the contract.' (*JIG The Third Corp.* v. *Puritan Mar. Ins. Under. Corp.* (5th Cir. 1975) 519 F.2d 171, 176-178.)" (*Fahey* v. *Gledhill, supra,* 33 Cal.3d 884, 893.)

To be enforceable, the language of the agreement to exclude negligence liability must be clear and unequivocal and go beyond describing the scope of the loss and reflect the physical or legal responsibility. (*Fahey* v. *Gledhill, supra,* 33 Cal.3d 884, 893-894, and cases cited; see also *Elgie & Co.* v. *S. S. "S. A. Nederburg"* (2d Cir. 1979) 599 F.2d 1177, 1183, cert. den. *South African Marine Corp.* v. *Elgie & Co.* (1980) 444 U.S. 1072 [62 L.Ed.2d 753, 100 S.Ct. 1016] ("disclaimers . . . of workmanlike service are not looked upon with favor and are strictly construed"); *M/V American Queen* v. *San Diego Marine Const., supra,* 708 F.2d 1483, 1488 (limitation clause will be enforced when language is unambiguous and there is no overreaching).)

Here, as in *Fahey,* the agreement clearly and unequivocally describes the scope of the loss ("any incidental, special or consequential damage of any nature whatsoever and/or any delay or loss of use of the vessel including without limitation lost revenues or lost profits") but fails to clearly and unequivocally reflect the "physical or legal responsibility," i.e., fails to clearly and unequivocally exclude liability for *negligence.* Nowhere in the clause is there language stating there is no liability for negligence and this court will not so imply absent specific language. (See *Fahey* v. *Gledhill, supra,* 33 Cal.3d 884, 894; but see *M/V American Queen* v. *San Diego Marine Const., supra,* 708 F.2d 1483, 1488-1491.)

A later clause in the contract does specifically mention liability for negligence; however, this clause only describes the procedure and the limitations period for filing claims against Campbell and thus cannot be read as language clearly and unequivocally protecting Campbell for liability for its negligent acts.

Moreover, we do not have facts before us reflecting whether the parties had equal bargaining power.

Thus, we conclude the exculpatory clause here does not protect Campbell from liability for its negligent repair as a matter of law.

## V

██ Campbell, after an analysis of cases awarding[3] and denying[4] recovery to fishermen for a lost share of the catch, argues recovery is only permitted when the mariners have devoted labor to the voyage.

A fisherman's recovery for a lost catch should not depend on whether the negligent repairs manifest themselves (or are discovered) at sea rather than in port before a scheduled fishing trip. In either case, the result is the same: an interruption of the fishing trip and a loss of the catch. To hold otherwise flies in the face of the strong policy of admiralty law protecting seamen from unseaworthy vessels. A negligently repaired vessel easily could be an unseaworthy vessel. Under Campbell's research, seamen could be compensated for their lost share of the catch only when the negligent repairs disabled their vessel at sea. The seamen, in essence, would be penalized (by losing their share of the catch) if the negligent repairs were remedied at the beginning of a scheduled trip. This result would hardly further the admiralty law policy.

Finally, the cases denying recovery, cited by Campbell, do not uniformly involve negligent injury to a vessel while not on a fishing trip (e.g., see *Guarrasi* v. *Panama Canal Company, supra,* 271 F.Supp. 678 [vessel was damaged during fishing trip while going through the Panama Canal resulting in loss of prospective catch and spoilage of catch on board]), rely on the decision of *Robins Dry Dock & Repair Co.* v. *Flint, supra,* 275 U.S. 303, or are expressly disapproved of in *Carbone* v. *Ursich, supra,* 209 F.2d 178, or are otherwise distinguishable.[5]

---

[3]Cases permitting recovery: *Taber* v. *Jenny, supra,* 23 Fed. Cas. 605 (No. 13,720) (whale captured and marked was spirited away by the defendant vessel); *The Mary Steele* (D.Mass. 1874) 16 Fed. Cas. 1003 (No. 9,226) (collision at sea); *The Columbia* (E.D.N.Y. 1877) 6 Fed. Cas. 173 (No. 3,035) (collision at sea); *Carbone* v. *Ursich, supra,* 209 F.2d 178 (collision at sea); *Rodrigues* v. *Campbell Industries, supra,* 87 Cal.App.3d 494 (defective manufacture of vessel). *Carbone* also cited a non-American case, *The Rissoluto* (1883) reported in 5 Aspinall's reports of Maritime Cases 93.

[4]Cases denying recovery: *Hayes* v. *Luckenbach S. S. Co.* (D.Mass. 1950) 92 F.Supp. 684 (vessel damaged while moored); *Hayes* v. *The Lucky Star* (D.Mass. 1952) 105 F.Supp. 176 (same); *Cusumano* v. *The Curlew* (D.Mass. 1952) 105 F.Supp. 428 (collision while returning from unsuccessful fishing trip); *Casado* v. *Schooner Pilgrim, Inc.* (D.Mass. 1959) 171 F.Supp. 78 (vessel moored when damage occurred); *Guarrasi* v. *Panama Canal Company, supra,* 271 F.Supp. 678 (vessel damaged while going through the Panama Canal).

[5]*Hayes* v. *Luckenbach S. S. Company, supra,* 92 F.Supp. 684, and *Hayes* v. *The Lucky Star, supra,* 105 F.Supp. 176, were decided largely on the basis the seamen, unlike the instant case, failed to allege they had any employment contract with the vessel. In *Hayes* v. *The Lucky Star,* the court specifically noted the issues raised did not involve the question whether or not the owners could have recovered for any loss of wages or the like suffered by the crewmembers but whether the crewmembers could recover in their own names when they had failed to allege the employment contract or any interest in the *Lucky Star.* More-

We decline to follow Campbell's authorities or reasoning.

## VI

█ In a related argument, Campbell asserts since the negligent repairs occurred between fishing trips and the fishermen were hired on a trip-to-trip basis, they are precluded from recovery for a lost share of the catch.

Whether an individual is a seaman or member of a crew is generally a question of fact to be determined by the trier of fact. (*Ramos* v. *Universal Dredging Corp.* (9th Cir. 1981) 653 F.2d 1353, 1357.) Here the shipping articles which reflect a collective bargaining agreement negotiated by the fishermen's union states the employment of the fishermen is on a trip-to-trip basis. However, the articles also state the right to dismiss a crewmember shall be exercised "no later than 48 hours after the completion of the trip. . . . Any Crewmember not so dismissed within such established 48 hour time period shall be deemed rehired as a crewmember for the vessel's next voyage." Additionally, there was a declaration that five of the fishermen were hired pursuant to an oral agreement to replace five crewmen fired pursuant to collective bargaining agreement before Campbell's negligence.

Thus, it cannot be said, as a matter of law, that the fishermen were not crewmen. Rather, this is a triable issue of fact and therefore not a proper subject of summary judgment.

The judgment is reversed.

Brown (Gerald), P. J., and Gamer, J.,* concurred.

A petition for a rehearing was denied January 7, 1985, and respondent's petition for a hearing by the Supreme Court was denied March 14, 1985.

---

over, the court in *Hayes* v. *The Lucky Star* relied for its decision on *Borcich* v. *Ancich* (9th Cir. 1951) 191 F.2d 392 which was overruled in *Carbone* v. *Ursich, supra,* 209 F.2d 178.

The remaining three cases, *Cusumano* v. *The Curlew, supra,* 105 F.Supp. 428; *Casado* v. *Schooner Pilgrim, Inc., supra,* 171 F.Supp. 78; and *Guarrasi* v. *Panama Canal Co., supra,* 271 F.Supp. 678, all relied on *Robins Dry Dock & Repair Co.* v. *Flint, supra,* 275 U.S. 303. *Cusumano* v. *The Curlew* also relied on *Borcich* v. *Ancich, supra,* 191 F.2d 392. *Casado* v. *Schooner Pilgrim, Inc.* and *Guarrasi* v. *Panama Canal Co.* additionally expressly declined to follow *Carbone* v. *Ursich.* Thus, these cases relied on authority rejected by the Ninth Circuit in *Carbone* v. *Ursich, supra,* 209 F.2d 178, and by the California Supreme Court in *Fahey* v. *Gledhill, supra,* 33 Cal.3d 884.

*Assigned by the Chairperson of the Judicial Council.